Present: Hassell, C.J., Keenan,[1] Koontz, Lemons, and Goodwyn, JJ., and Carrico and Lacy, S.JJ.

JANICE LARUE ORNDORFF

OPINION BY
v. Record No. 090907     JUSTICE LAWRENCE L. KOONTZ, JR.
                              April 15, 2010
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA


Appealing her conviction in the Circuit Court of Prince William County for the second degree murder of her husband Goering G. Orndorff, Code § 18.2-32, and a related conviction for use of a firearm in the commission of a felony, Code § 18.2-53.1, Janice Larue Orndorff maintains that she should be awarded a new trial in order to present evidence which was discovered after the conclusion of the guilt-determination phase of her original trial. Orndorff maintains that this evidence would demonstrate to a new jury that she suffers from dissociative identity disorder ("DID"), a mental illness she contends would serve as the basis for a defense of insanity if accepted by the jury.[2]

_____

[1] Justice Keenan participated in the hearing and decision of this case prior to her retirement from the Court on March 12, 2010.

[2] In general terms, dissociative identity disorder, formerly termed multiple personality disorder, is the presence of two or more distinct identities or personality states that recurrently take control of behavior. The disorder reflects a failure to integrate various aspects of identity, memory, and consciousness. American Psychiatric Association, Diagnostic

In this appeal, we consider whether the Court of Appeals erred in holding that the circuit court properly denied Orndorff's motion for a new trial on the ground that she had not met her burden of showing that this after-discovered evidence was "material, and such as should produce opposite results on the merits at another trial." Odum v. Commonwealth, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983).

BACKGROUND

In a prior appeal, Orndorff v. Commonwealth, 271 Va. 486, 628 S.E.2d 344 (2006) (hereinafter, "Orndorff I"), we determined that the circuit court incorrectly considered the verdict and sentence rendered by the jury in Orndorff's trial in determining whether the after-discovered evidence of DID would materially affect the result if presented in a new trial.[3] We concluded that because a determination of materiality of after-discovered evidence required the circuit court to independently resolve questions of weight and credibility in applying that evidence to the record as a

---

and Statistical Manual of Mental Disorders – Text Revision § 300.14, at 526-29 (4th ed. 2000).

[3] Because the evidence and incidents of the trial relevant to the original jury determination of Orndorff's guilt and her sentence are fully set out in the prior opinion of this Court, Orndorff I, 271 Va. at 491-98, 628 S.E.2d at 346-50, we will limit our review of the record in this opinion to the proceedings relevant to the issue addressed by the circuit court on remand.

whole, the sole remedy was to remand the case to the circuit court for a proper application of Odum.[4]  Orndorff I, 271 Va. at 505, 628 S.E.2d at 355.

Upon remand, the circuit court ruled that a new jury hearing evidence of Orndorff's alleged mental disorder would not reach a different result than that reached at the first trial and, thus, again ruled that she had not satisfied the materiality requirement for granting a motion for a new trial. For reasons set out more fully in our discussion below, the circuit court concluded that, when considered against other evidence in the record, Orndorff's proffered evidence lacked sufficient credibility to permit a new jury to find that she actually suffered from DID.  The court further ruled that even if the jury were to find that Orndorff suffered from DID, this would not permit the jury to acquit her because no evidence established that her mental disorder rendered her legally insane either under the "M'Naghten Rule" standard for a

---

[4] In reaching this conclusion, we further indicated that we would not address the issue, raised by the Commonwealth, whether a defendant who allegedly suffers from DID may ever assert an insanity defense.  Orndorff I, 271 Va. at 506, 628 S.E.2d at 355.  In declining to reach this issue, we noted that the circuit court had not ruled on it, and we expressly stated that we would not "speculate whether the circuit court will be required to reach that issue in conducting its 'materiality' analysis on remand."  Id.

defense of insanity or under the theory that she acted under the compulsion of an irresistible impulse.[5]

The Court of Appeals affirmed this judgment in an unpublished opinion, limiting its review to the circuit court's determination that Orndorff had not established the materiality of the after-discovered evidence, and declining to address the court's further determinations with respect to whether Orndorff's alleged DID would satisfy either form of an insanity defense. Orndorff v. Commonwealth, Record No. 0495-07-4, slip op. at 6 & n.5 (April 7, 2009). We awarded

---

[5] As applied in Virginia, the defense of insanity provides that a "defendant may prove that at the time of the commission of the act, he was suffering from a mental disease or defect such that he did not know the nature and quality of the act he was doing, or, if he did know it, he did not know what he was doing was wrong." White v. Commonwealth, 272 Va. 619, 625, 636 S.E.2d 353, 356 (2006). We first recognized the availability of a defense of insanity in Boswell v. Commonwealth, 61 Va. (20 Gratt.) 860, 874-76 (1871), which adopted, without directly citing, the basic principles set out in the opinion of Lord Chief Justice Tindal in M'Naghten's Case, 10 Cl. and F. 200, 8 Eng. Rep. 718 (H.L. 1843). Subsequently, we have referred to these principles as the "M'Naghten Rule." See, e.g., Price v. Commonwealth, 228 Va. 452, 457-458, 323 S.E.2d 106, 108-109 (1984). In addition, we have approved in appropriate cases the granting of an instruction defining an "irresistible impulse" as a form of legal insanity. See, e.g., Thompson v. Commonwealth, 193 Va. 704, 717, 70 S.E.2d 284, 292 (1952). "The irresistible impulse doctrine is applicable only to that class of cases where the accused is able to understand the nature and consequences of his act and knows it is wrong, but his mind has become so impaired by disease that he is totally deprived of the mental power to control or restrain his act." Id. at 718, 70 S.E.2d at 292.

4

Orndorff an appeal to consider whether the Court of Appeals correctly determined that the circuit court did not err in concluding that she failed to meet her burden of showing the materiality of the new evidence and whether the circuit court erred in concluding that a diagnosis of DID in her case could not serve as the basis for an insanity defense.  We also granted an assignment of cross-error raised by the Commonwealth asserting that the Court of Appeals erred in failing to rule that a diagnosis of DID could not serve as the basis for an insanity defense.

## DISCUSSION

Whether a motion for a new trial based on after-discovered evidence should be granted "is a matter submitted to the sound discretion of the circuit court and will be granted only under unusual circumstances after particular care and caution has been given to the evidence presented." Orndorff I, 271 Va. at 501, 628 S.E.2d at 352.  In such cases, the moving party has the burden of proof before the circuit court to establish that such evidence

> (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

Odum, 225 Va. at 130, 301 S.E.2d at 149.

5

When Orndorff's motion for a new trial was first presented to the circuit court, only the second and fourth components of the Odum test were at issue. Subsequently, in Orndorff I we concluded that Orndorff had satisfied the "reasonable diligence" requirement. 271 Va. at 501-04, 628 S.E.2d at 352-54. Accordingly, on remand the sole issue before the circuit court was whether, in accord with the fourth component of the Odum test, evidence of Orndorff's alleged mental disorder was "material, and such as should produce opposite results on the merits at another trial." 225 Va. at 130, 301 S.E.2d at 149.

In considering Orndorff's motion in the first instance, the circuit court had relied upon the fact that the jury had received evidence during the penalty-determination phase of the trial that Orndorff suffered from DID, offered not as an assertion of a defense of insanity, but merely as mitigation evidence. The court presumed that the jury had rejected this mitigation evidence based on the length of the sentence imposed. We held that the court erred because in so doing the court improperly "substituted in place of its own judgment the reaction of a jury that had already resolved crucial credibility issues against Orndorff in the guilt[-determination] phase of trial" before the evidence of her

6

alleged DID had been presented. Orndorff I, 271 Va. at 505, 628 S.E.2d at 354-55.

Upon remand, no additional evidence was taken, but the circuit court reviewed the transcript as well as over one hundred pages of notes taken by the court during the guilt and penalty determination phases of the trial. The circuit court received additional argument from the parties by briefs and in a hearing held February 2, 2007. At the conclusion of the hearing, the circuit court again denied Orndorff's motion for a new trial based on the after-discovered evidence purporting to show that Orndorff suffered from DID.

In its summation stating the reasons for denying the motion for a new trial, the circuit court expressly acknowledged the mandate of this Court to apply the Odum test based on the evidence in the record without regard to the verdict rendered by the original jury. The court also reviewed additional case law pertaining to the proper standard for reviewing a motion for a new trial based on after-discovered evidence.

So instructed, the circuit court then independently evaluated the record as a whole and concluded that Orndorff had not satisfied the materiality component of the Odum test because a new jury would not reasonably be able to find Orndorff's claim that she suffered from DID to be credible.

7

The court stated that it arrived at this conclusion based on the court's own "opportunity to observe Ms. Orndorff, [the court's] opportunity to observe all of the witnesses in the trial and their testimony, [and the court's] opportunity to weigh the evidence that was presented." Specifically, the court indicated that it placed special emphasis on the absence of credible evidence that Orndorff suffered a "lengthy childhood trauma," rising to the level of "horrible, physical, and/or sexual abuse," as that evidence was "distinctive in assessing the credibility or the weight of the expert witnesses," who testified that such trauma was necessary for a person to develop DID.

The circuit court also found that "there was strong evidence from the doctors and others that saw [Orndorff] at Central State [Hospital] that would [lead] one to believe that she was a manipulative person who was trying to manipulate the evidence against her." The court noted that the Commonwealth had adduced evidence that Orndorff "alter[ed] the scene of the offense" and "attempt[ed] to bribe a witness to help her with her [claim of] self-defense."[6] The court recalled clearly observing during the trial that Orndorff's behavior correlated

_____

[6] During the guilt-determination phase of her trial, Orndorff asserted that she had acted in self-defense, rather

8

directly to how well or how poorly she appeared to perceive the case was proceeding, manifesting bizarre behavior only when "something negative was said about her."  In that regard, the Commonwealth had presented evidence that Orndorff had told her cellmate while she was confined to jail that "she could be five or twelve [years old], whenever she wanted to be, and she was going to beat [the] doctors at Central State [Hospital]."

The circuit court further concluded that even if a new jury were to accept that Orndorff suffered from DID, none of the expert testimony would support instructing the jury on the defense of insanity under the M'Naghten Rule standard.  The court found that "there just simply is not sufficient evidence . . . on the [insanity] defense that would get [Orndorff] to the jury on that issue."  In doing so, however, the court did not expressly rule that a diagnosis of DID could never be applied to support an insanity defense.

The circuit court also ruled that the one expert who opined that Orndorff's alleged DID might support a defense of irresistible impulse did so only in a conclusory fashion.  The court expressly stated that the expert failed to "support the basis for the opinion" that Orndorff would have been deprived

---

than as a result of insanity or irresistible impulse. Orndorff I, 271 Va. at 494, 628 S.E.2d at 348.

of the mental power to control or restrain the actions of her "alter" personalities.

Orndorff contends that in the proceedings on remand the circuit court once again "misinterpret[ed] its proper role in weighing evidence" and that "its factual findings resulting from this misinterpretation lacked any real evidentiary support." Orndorff asserts that the circuit should have weighed only the credibility of the expert evidence concerning whether she suffered from DID, without considering other aspects of the record relied on by the court in determining that a new jury would not reasonably conclude that she actually had DID. She further asserts that in making this analysis, "it is irrelevant whether the court believes the new evidence to be true," contending that the court is required to assume that the new evidence would be believed by the new jury. We disagree.

Orndorff's position is directly contrary to our recitation of the proper standard for considering a motion for a new trial based on after-discovered evidence that we directed the circuit court to apply in Orndorff I. As we explained in Orndorff I, when "the evidence supporting the new trial motion is contradicted by evidence in opposition to the motion, the circuit court is not permitted to presume that the moving party's evidence is true but is required to weigh all

10

the evidence presented in determining whether the moving party has satisfied the materiality standard articulated in Odum." 271 Va. at 504-05, 628 S.E.2d at 354 (emphasis added). Accordingly, "the court's role resembles that of a fact finder in determining whether the evidence is such that it should produce an opposite result on the merits at a new trial." Id. at 505, 628 S.E.2d at 354.

Moreover, because the consideration of a motion for a new trial is committed to the sound discretion of the circuit court, when a proper standard is applied by the circuit court the appellate court may not substitute its own judgment of the record, but must defer to the circuit court which had the opportunity to assess the credibility of the witnesses and was in the best position to determine the weight to be accorded the evidence. See Odum, 225 Va. at 131, 301 S.E.2d at 149; Holmes v. Commonwealth, 156 Va. 963, 969, 157 S.E. 554, 556 (1931).

The record of the hearing on remand in this case amply demonstrates that the circuit court understood the mandate of this Court and assiduously reviewed the record with particular care and caution under the appropriate standard. In doing so, the circuit court set out at length its reasons for finding that the after-discovered evidence would not lead a new jury to conclude that Orndorff suffered from DID, or that if she

11

did, she would be entitled to have the jury instructed on a defense of insanity or a defense of irresistible impulse. The court's conclusions are entirely supported by the record. Accordingly, we cannot say that the circuit court abused its discretion when it determined that Orndorff's asserted after-discovered evidence was not credible and that, because it was not credible, it was not material and would not produce opposite results on the merits at another trial.

While we approve the circuit court's determination that the expert testimony presented in this case failed to establish either that Orndorff's alleged DID rendered her legally insane at the time of the murder under the M'Naghten Rule standard or that she was acting under an irresistible impulse, we emphasize that we do not today decide the issue whether a person with DID might in some case be shown to be legally insane or incapable of exercising the power to control or restrain his or her actions because of an irresistible impulse. Thus, while the parties have extensively briefed this issue and its treatment in other jurisdictions in addressing Orndorff's second assignment of error and the Commonwealth's assignment of cross-error, we need not reach that issue and, accordingly, we will express no opinion thereon.

12

CONCLUSION

For these reasons, the judgment of the Court of Appeals holding that the circuit court did not abuse its discretion in denying Orndorff's motion for a new trial will be affirmed.

Affirmed.