COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and O'Brien
Argued by videoconference


CLINTON COLEMAN, S/K/A
 CLINTON DAMON COLEMAN

                                          MEMORANDUM OPINION[*] BY
v.       Record No. 0993-20-2              JUDGE MARY GRACE O'BRIEN
                                               OCTOBER 5, 2021

COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                      Joseph M. Teefey, Jr., Judge

          Daniel W. Hall (Law Office of Daniel W. Hall, on brief), for
          appellant.

          Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
          Herring, Attorney General, on brief), for appellee.


        A jury convicted Clinton Damon Coleman ("appellant") of aggravated malicious wounding,

in violation of Code § 18.2-51.2, and use of a firearm in the commission of a felony, in violation of

Code § 18.2-53.1. Appellant contends that the evidence was insufficient to sustain his convictions.

He also argues that the court abused its discretion by refusing to grant a new trial based on

after-discovered evidence.

                                    BACKGROUND

        We state the evidence in the light most favorable to the Commonwealth, the prevailing party

at trial, and "accord the Commonwealth the benefit of all reasonable inferences fairly deducible

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

from that evidence." Chavez v. Commonwealth, 69 Va. App. 149, 153 (2018) (quoting Sidney v. Commonwealth, 280 Va. 517, 520 (2010)).

At approximately 5:30 p.m. on February 18, 2019, Petersburg police officers responding to a 911 call from the Pecan Acres apartment complex found Demario Fisher, who had been shot multiple times. Fisher told the officers that three men had shot him: appellant, Jaquan Tucker, and William Rives. Fisher's statements identifying appellant as a shooter were recorded in an officer's body camera footage. Before the officers arrived, Fisher had also left a voicemail message for his girlfriend identifying the same men as the shooters. The body camera footage and voicemail message were played for the jury.

Fisher had driven to the apartment complex that day to see friends. When he arrived, he noticed Tucker and appellant. Fisher parked and approached a group of people that included Tucker's brother, "Mojo." Mojo received a telephone call from Tucker and handed the phone to Fisher. Tucker threatened Fisher, who started to walk back toward his car.

Tucker approached and shot Fisher in the arm. Fisher ran away and heard more gunshots as he was running. He hid behind a brick wall and called 911. When the shooting stopped, Fisher tried to get back to his car. Appellant, Tucker, and Rives came from behind a building, and each began shooting Fisher, who sustained serious injuries. The assailants were subsequently arrested.

During the first day of trial, before Fisher testified, the court advised that it would recess until the next day due to an electrical problem. At that time, outside the presence of the jury, the Commonwealth told the court that Fisher did not want to return and no longer wanted to testify. The court reminded Fisher that he was under subpoena and required to come back the next day or face incarceration. Fisher appeared the next morning, and the trial proceeded without incident.

In his testimony, Fisher identified appellant as one of the men who shot him, and he specified that appellant was armed with a "semi-automatic . . . black handgun." On cross-examination, appellant did not question Fisher about any reluctance to testify.

A resident of the apartment complex testified that she heard "at least [twenty] or more gunshots" and subsequently discovered "at least five or six bullet shells" in her front yard. She also found "three bullet holes in [her] house," near her front living room. A handyman working in another apartment unit heard gunshots as well and later discovered that bullets had been fired through the windshield of his truck.

Justus Watson testified for appellant. He stated that appellant did not shoot Fisher. Watson explained that he was with appellant on February 18, 2019, and when the shooting began, they both ran away. According to Watson, he saw a "light-skinned person chasing Mr. Fisher down the street, shooting."

Deja Brown, who identified herself as appellant's "best friend," testified that when the shooting started, she was talking with appellant from inside her car. Brown drove away when she heard gunshots, and she testified that appellant ran in a different direction from the gunshots. She also stated that she did not see appellant with a gun.

Appellant testified that he and Brown were "smoking weed" when the shooting began. He stated that they ducked down, heard more gunshots, and saw Fisher being chased by a light-skinned man "they refer [to] as Teasy." Appellant denied carrying a gun or shooting Fisher. Appellant admitted that he initially told the police that he was not present when the shooting occurred and knew nothing about the incident. He also admitted that he had given the police the names of two would-be alibi witnesses who would falsely testify that he was not there. Finally, appellant confirmed that he sent Brown a text message before trial "to make sure she said the right things."

Appellant's sister testified that after the shooting, Fisher told her via Facebook Messenger that he knew appellant was innocent and, although the Commonwealth was forcing him to "stick to [his] story," he would drop the charges for $3,500. Facebook messages reflecting this conversation were admitted into evidence, but Fisher denied having participated in the conversation.

The jury convicted appellant of both charges. Appellant subsequently filed motions to set aside the verdict and dismiss or, in the alternative, grant a new trial based on after-discovered evidence consisting of new testimony from Fisher. The court denied appellant's motion to set aside the verdict and dismiss, but it conducted a hearing on his motion for a new trial. At the hearing, Fisher stated that he was "mistaken" when he testified at trial that appellant shot him. He stated that appellant "was out there, he was with them, but I didn't honestly see him shoot me." Fisher explained that he mistakenly identified appellant as a shooter because "[a] lot was going on at the time" because he was "getting shot" approximately twenty times.

On cross-examination, Fisher acknowledged that immediately after being shot, he left a voicemail message for his girlfriend identifying appellant as one of the shooters. He conceded that he told the same information to the police. He also admitted he had been offered payment not to come to court and testify at appellant's trial. Although Fisher denied being threatened, he stated that after the trial, someone shot at his vehicle while he was inside it.

The court determined that, considering all the trial evidence identifying appellant as one of the shooters, Fisher's new testimony was insufficient to set aside the verdict. Specifically, the court noted that in addition to Fisher's trial testimony identifying appellant as one of the shooters, the jury heard recordings of two separate statements he made to different people at the time of the shooting that named appellant as a shooter. The court also referred to "the level of threat" that had been made against Fisher after the trial. Accordingly, the court denied the motion for a new trial.

ANALYSIS

I. Sufficiency of the evidence

Appellant first contends that "[t]he evidence was insufficient to prove beyond a reasonable doubt that [appellant] was guilty of malicious wounding and use of a firearm."

When considering the sufficiency of the evidence from a jury verdict, we consider the evidence and all reasonable inferences in the light most favorable to the Commonwealth. See Chavez, 69 Va. App. at 161. Further, we "discard the evidence of the accused in conflict with that of the Commonwealth[.]" Kelly v. Commonwealth, 41 Va. App. 250, 254 (2003) (en banc). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez, 69 Va. App. at 161 (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)). "We will reverse a trial court's refusal to set aside a jury verdict only if that verdict was 'plainly wrong or without evidence to support it.'" Banks, 67 Va. App. at 288 (quoting Code § 8.01-680).

Appellant argues that the evidence was insufficient to prove that he shot Fisher because Fisher's testimony was "inherently incredible." He also relies on the Commonwealth's failure to establish a motive for the shooting.

Although appellant concedes that motive is not an element of aggravated malicious wounding, he nevertheless argues that without evidence of a motive, the Commonwealth was unable to establish malicious intent, as required by Code § 18.2-51.2(A).[1]

---

[1] The statute provides as follows:

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony

Malice is "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." Watson-Scott v. Commonwealth, 298 Va. 251, 255-56 (2019) (quoting Dawkins v. Commonwealth, 186 Va. 55, 61 (1947)). Whether a defendant acted with malice is a question of fact. Robertson v. Commonwealth, 31 Va. App. 814, 823 (2000).

Malice can be inferred from the deliberate use of a deadly weapon. See Watson-Scott, 298 Va. at 256; Perricllia v. Commonwealth, 229 Va. 85, 91 (1985). Although no other witnesses testified that they saw appellant with a gun, Fisher's testimony and recorded evidence identifying appellant as one of the shooters, coupled with the presence of bullet holes and shell casings at the scene, constituted sufficient evidence from which the jury could conclude that appellant used a firearm and therefore acted with malice.

In arguing that Fisher's trial testimony was inherently incredible, appellant contends that the court should have considered Fisher's reluctance to testify as "strong evidence that his testimony as to [appellant's] participation in the shooting . . . was not worthy of belief."

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." Dalton v. Commonwealth, 64 Va. App. 512, 525 (2015) (alteration in original) (quoting Lea v. Commonwealth, 16 Va. App. 300, 304 (1993)). "When 'credibility issues have been resolved by the jury in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.'" Towler v. Commonwealth, 59 Va. App. 284, 291 (2011) (quoting Corvin v. Commonwealth, 13 Va. App. 296, 299 (1991)). Testimony is only inherently incredible as a matter of law if it is "either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men

---

if the victim is thereby severely injured and is caused to suffer
permanent and significant physical impairment.

should not differ." Juniper v. Commonwealth, 271 Va. 362, 415 (2006) (quoting Cardwell v Commonwealth, 209 Va. 412, 414 (1968)).

Fisher's reluctance to testify was not evidence before the jury. Accordingly, the jury could not and did not consider it when assessing Fisher's credibility. Appellant nevertheless contends that the court, which addressed Fisher's reluctance outside the presence of the jury, erred by not finding Fisher's testimony inherently incredible and should have set aside the jury verdict on that basis.

In ruling on appellant's motion, the court declined to speculate as to the reason for Fisher's reluctance to testify. The court stated that it was "not the place for the [c]ourt to divine why" a witness may be reluctant to testify. On the contrary, the court found that Fisher testified "in a straightforward way," and his testimony was "accepted by the jury."

We defer to credibility determinations made by the trier of fact. See Dalton, 64 Va. App. at 525. Here, Fisher not only testified at trial that appellant was one of the people who shot him, but immediately after the shooting Fisher related the same information to his girlfriend and the police. His trial testimony was not inherently incredible but was in fact corroborated by recorded statements in the voicemail message and on the police officer's body camera footage. In contrast, appellant admitted at trial that he lied to police and attempted to procure alibi witnesses to establish that he was not present when the crime was committed. The jury was entitled to reject appellant's testimony, believe Fisher, and base its verdict upon his testimony. See id. at 526 (stating that when the trier of fact "judge[s] the credibility of a witness . . . [and] sees fit to base the verdict upon that [witness'] testimony, there can be no relief in the appellate court" (quoting Simpson v. Commonwealth, 199 Va. 549, 557-58 (1957))). The court also was not required to speculate as to the reason for Fisher's initial reluctance to testify.

The jury's verdict was not plainly wrong or without evidence to support it. Therefore, the court did not err in denying appellant's motion to set aside the verdict.

## II.  Motion for a new trial

Appellant also contends that the court erred by denying his motion for a new trial based on after-discovered evidence.  He relies on Fisher's testimony that he "could not recall" if appellant shot him and was "mistaken" about whether appellant shot him.

A motion for a new trial "is a matter submitted to the sound discretion of the circuit court and will be granted only under unusual circumstances after particular care and caution has been given to the evidence presented."  Orndorff v. Commonwealth, 271 Va. 486, 501 (2006) ("Orndorff I").  The party moving for a new trial based on after-discovered evidence has the burden to establish that such evidence

> (1) appears to have been discovered subsequent to the trial; (2) could not have been secured for use at the trial in the exercise of reasonable diligence by the movant; (3) is not merely cumulative, corroborative[,] or collateral; and (4) is material, and such as should produce opposite results on the merits at another trial.

Id. (quoting Odum v. Commonwealth, 225 Va. 123, 130 (1983)).

Here, the court determined that appellant failed to satisfy the "materiality" requirement of the Odum test.  Appellant was required to prove that the evidence he produced in support of the motion was "material, and such as should produce opposite results on the merits at another trial."  Odum, 225 Va. at 130.  See also Mundy v. Commonwealth, 11 Va. App. 461, 481 (stating that a new trial is only granted "when it appears that the newly discovered evidence has sufficient probative weight to produce a different result on retrial"), aff'd on reh'g en banc, 11 Va. App. 461 (1990).

Further, where the purportedly new evidence is a witness' recantation, "[t]here must be clear and convincing proof that the witness testified falsely at the trial, and not merely proof that by reason of conflicting statements his testimony is unworthy of belief."  Lewis v. Commonwealth, 193 Va. 612, 625 (1952).  Clear and convincing proof is required in the context of recantation

evidence because "[t]he opportunity and temptation for fraud are so obvious[.]" Id. In Lewis, the Supreme Court affirmed the denial of a new trial motion where a witness recanted his trial testimony in a sworn affidavit and also repudiated this recantation at the hearing on the motion. Id. at 626. The Court stated,

> [W]hile we know from his lips that this witness spoke falsely on one occasion, this does not establish that his testimony at the trial was false and the statements in the subsequent affidavit were true. In the final analysis proof of such conflicting statements amounts merely to an attack upon his credibility.

Id.

"[W]hen a circuit court is presented with conflicting evidence in considering a motion for a new trial, the court's role resembles that of a fact finder in determining whether the evidence is such that it should produce an opposite result on the merits at a new trial." Orndorff I, 271 Va. at 505. As fact finder, the court is required to assess the credibility of a witness presenting the after-discovered evidence. See id. In the context of recantation evidence, this credibility determination can involve weighing the witness' new testimony against the opposite testimony he gave at trial. Virginia law has long recognized the importance of this gatekeeping duty in the context of purported recantation evidence. See Lewis, 193 Va. at 625. Further, "newly-discovered evidence which merely discredits, contradicts, or generally impeaches a witness is not a basis for granting a new trial." Mundy, 11 Va. App. at 481.

Under these principles, if a court finds that the new recantation evidence does not establish by clear and convincing proof that the trial testimony was false, this credibility determination controls, and the court must deny the motion for a new trial. See Orndorff I, 271 Va. at 501. The appellate court, in turn, "may not substitute its own judgment of the record, but [it] must defer to the circuit court which had the opportunity to assess the credibility of the witnesses and was in the best

position to determine the weight to be accorded the evidence." Orndorff v. Commonwealth, 279 Va. 597, 605 (2010) (appeal after remand of Orndorff I).

Here, we hold that the court acted within its discretion in weighing all the evidence and concluding that Fisher's new testimony – that he could not recall who shot him and that he mistakenly identified appellant – would not produce a different result in a new trial. In reaching that conclusion, the court recounted evidence that supported not only appellant's convictions but also Fisher's trial testimony identifying appellant. The court emphasized that, in the immediate aftermath of the shooting, Fisher identified appellant as one of the perpetrators both in a voicemail message to his girlfriend and to the police who responded to the scene, corroborating Fisher's trial testimony identifying appellant as one of the shooters. The court also noted that Fisher had experienced threats since trial, including gunfire at his car, which impacted the credibility of his new testimony.

The court did not explicitly assess whether Fisher's hearing testimony amounted to clear and convincing proof that he testified falsely at trial. Nevertheless, the court clearly understood that it was required to act as the fact finder in evaluating the new evidence. It was free to weigh Fisher's hearing testimony against his prior statements unequivocally identifying appellant as the shooter and to consider the weight of all other evidence supporting the conviction.

Based on our review of the record, we conclude that the evidence supports the court's finding that appellant did not meet his burden of showing that Fisher's new testimony was material and warranted a new trial.

## CONCLUSION

For the foregoing reasons, we hold that the evidence was sufficient to sustain appellant's convictions for aggravated malicious wounding and use of a firearm in the commission of a felony.

Further, the court did not abuse its discretion in denying appellant's motion for a new trial.

Therefore, we affirm appellant's convictions.

<u>Affirmed.</u>