COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Huff, Athey and Fulton
Argued by videoconference


JAQUAN R. TUCKER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0553-21-2                      JUDGE JUNIUS P. FULTON, III
                                                    APRIL 26, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

Todd M. Ritter (Daniels, Tuck & Ritter, on brief), for appellant.

Leanna C. Minix, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


This appeal follows Tucker's jury conviction of aggravated malicious wounding and use of

a firearm in the commission of a felony. In a separate order entered the same day as his new

convictions, the trial court revoked eight years of previously suspended incarceration on Tucker's

prior convictions. On appeal, Tucker alleges that his motion to set aside the verdict should have

been granted on *Brady* grounds, that his verdict should have been set aside because of newly

discovered evidence, and that his previously suspended sentences imposed after his conviction

should be subject to reversal on appeal. We disagree.

BACKGROUND

On October 25, 2019, Tucker was convicted by a jury in Petersburg circuit court of

aggravated malicious wounding and use of a firearm in the commission of a felony. The victim was

Demario Fisher. Fisher was shot over five times in the Pecan Acres apartment complex in the City

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

of Petersburg on February 18, 2019. In describing the events leading up to the shooting, Fisher explained that when he entered the Pecan Acres apartment complex he saw Tucker—whom he knew as "Dough"—driving a vehicle with three other passengers. Fisher eventually went one way in the complex, and Tucker's vehicle went another way. Before leaving, Fisher stopped his car and spoke to his friend. Fisher then walked to an apartment to speak with some workers about a job opportunity. While talking to the workers, Fisher noticed Tucker's brother, who was nearby, on the phone with Tucker. Fisher became concerned about the call and asked Tucker's brother to call Tucker back so Fisher could speak with him. Fisher spoke to Tucker and perceived an issue. Fisher and Tucker's brother then walked towards and approached Tucker who was with a group. Before Fisher could "defuse the situation," he was shot. Fisher attempted to escape to his aunt's nearby apartment but was shot multiple additional times. The gunfire culminated with the last shots being fired while he laid prone on the doorstep of an apartment, unable to flee. Fisher called 911 and attempted phone calls to his girlfriend, Myisha Manson, ultimately leaving her a voicemail identifying William Rives, Jaquan "Dough" Tucker, and Clinton "Gutta" Coleman as the shooters. When the police arrived, Fisher was conscious and again identified Rives, Tucker, and Coleman as the shooters.

Each of the defendants—Rives, Tucker, and Coleman—was tried separately. Rives was the last co-defendant to stand trial. In December of 2019, after Tucker's trial but prior to his sentencing, the prosecuting attorney, Buckner, notified Tucker's trial counsel, Gerlach, that both Fisher and Manson had prior convictions that were not previously disclosed. Following this disclosure, Tucker's trial counsel filed a motion to set aside the verdict and dismiss or grant a new trial. The trial court heard the arguments of Tucker's counsel at a subsequent hearing. At the hearing, Gerlach testified that she was not aware of the prior convictions and did not have copies of the criminal histories of any of the Commonwealth's witnesses prior to Tucker's trial. According to

Buckner, it was only after Rives' trial that she learned of the witnesses' prior convictions. Prior to Tucker's trial, Buckner extended an invitation to Tucker's counsel to review the criminal histories of any of the Commonwealth's witnesses in the Commonwealth's Attorney's office. Although Tucker's counsel visited the Commonwealth's Attorney's office for another purpose, Tucker's counsel did not ask to review the criminal histories of any of the Commonwealth's witnesses. At a subsequent hearing in the matter, Fisher was called to testify, during which time he stated that he "can't recall" that Tucker shot him and that it was just Rives and Coleman. Fisher also testified that he had received threats related to his testimony and coming to court. At the conclusion of the hearing, the trial court denied Tucker's motion to set aside the verdict or for a retrial.

## ANALYSIS

### A. Tucker failed to prove a *Brady* violation.

In reviewing the denial of a *Brady* motion, the trial court's factual findings will not be disturbed absent clear error. *See Walker v. Kelly*, 589 F.3d 127, 140 (4th Cir. 2009). In contrast, we review the trial court's legal conclusions *de novo*. *See id.*

"[T]here is no general constitutional right to discovery in criminal cases." *Martinez v. Commonwealth*, 42 Va. App. 9, 26 (2003). "However, a defendant is entitled to exculpatory evidence in the possession of the prosecution." *Id.* Under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, "due process requires that the prosecution disclose evidence favorable to the accused that is material to guilt or punishment." *Church v. Commonwealth*, 71 Va. App. 107, 117 (2019) (citing *Commonwealth v. Tuma*, 285 Va. 629, 634 (2013)). "*Brady* is 'a disclosure rule, not a discovery rule.'" *Tuma*, 285 Va. at 635 (quoting *United States v. Higgins*, 75 F.3d 332, 335 (7th Cir.1996)). "*Brady* obligations extend not only to exculpatory evidence, but also to impeachment evidence[.]" *Castillo v. Commonwealth*, 70 Va. App. 394, 465-66 (2019) (alteration in original) (quoting *Coley v. Commonwealth*, 55 Va. App. 624, 630 (2010)). "For

*Brady* purposes, '[e]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Massey v. Commonwealth*, 67 Va. App. 108, 127 (2016) (alteration in original) (quoting *Coley*, 55 Va. App. at 631). "Evidence may be material under *Brady* even though it is inadmissible . . . . Because of the requirement that the outcome of the proceeding be affected, [this Court] often consider[s] whether the suppressed, inadmissible evidence would have led to admissible evidence." *Workman v. Commonwealth*, 272 Va. 633, 647-48 (2006) (quoting *United States v. Sipe*, 388 F.3d 471, 485 (5th Cir. 2004)).

A defendant seeking to prove a *Brady* violation must establish that: "a) [t]he evidence not disclosed to the accused must be favorable to the accused . . . ; b) the evidence not disclosed must have been withheld by the Commonwealth either willfully or inadvertently; and c) the accused must have been prejudiced." *Massey*, 67 Va. App. at 125 (quoting *Hicks v. Dir., Dep't of Corr.*, 289 Va. 288, 299 (2015)). Here, Tucker can only satisfy the first two prongs of the test.

First, the prior convictions of Fisher and Manson were exculpatory evidence that was not disclosed to Tucker before trial. Evidence of the prior convictions of a witness is impeachment evidence under *Brady*. *See Correll v. Commonwealth*, 232 Va. 454, 465 (1987). Because the prior convictions here were exculpatory, Tucker satisfies the first prong of the *Brady* test.

Second, the withholding of evidence satisfies the second prong of *Brady*. Even though the Commonwealth was unaware of the prior convictions of Fisher and Manson at the time of Tucker's trial, it certainly had the means to obtain such information. This information was not like evidence in other cases that could be deemed to have been unavailable. Although we do not impose a blanket mandate to investigate the criminal history of every possible witness, we do echo our prior sentiments that "[w]e do not believe that an unreasonable burden is imposed on the Commonwealth if required to discover the criminal record of its witnesses, especially when

such information is readily available." *Fitzgerald v. Bass*, 6 Va. App. 38, 51-52 (1988). It certainly would have been prudent for the Petersburg's Commonwealth's Attorney's Office to conduct a search of the criminal histories of at least its star witness, Fisher. Had such an investigation been made, this situation could have been avoided. But instead the Commonwealth must now bear the consequences of *Brady* scrutiny of their inaction. Thus, although the Commonwealth was not aware of the histories of Fisher and Manson, it failed to affirmatively take action to identify the available exculpatory evidence. Whether willful or inadvertent, we find that the non-disclosure satisfies the second prong of *Brady*.

But, as to the third prong, Tucker was not prejudiced. It is clear from this record that Tucker failed to meet his burden that the "suppression of evidence 'undermines confidence in the outcome of the trial.'" *Workman*, 272 Va. at 645 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). To do so, the evidence must be "material" under *Brady*, meaning "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Tuma,* 285 Va. at 634-35 (2013) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)); *see also Massey*, 67 Va. App. at 125 (describing the third prong as whether the accused was prejudiced).

Here, the record supports confidence in the outcome of the trial. Because of her limited role at trial—namely confirming receipt of the voicemail message from Fisher, which was played at trial—Tucker agrees that the prior conviction of Manson was not material to his underlying conviction. Tucker insists, however, that Fisher's prior convictions were material because he was the sole eyewitness who testified at trial. Tucker argues that Fisher's criminal history could have been used to challenge the credibility of Fisher's eyewitness account and thereby challenge the underlying charges. We disagree that such evidence was material to this case. Fisher's testimony at trial was consistent with his contemporaneous statements made to police at the

scene and in his voicemail to Manson immediately after the shooting, both of which we view as offering sufficient indicium of reliability because they were made by Fisher in the immediate aftermath of his multiple gunshot wounds. Fisher's prior criminal history does not tarnish his dying declarations nor does it establish any basis or motive for Fisher to lie. Based on this evidence, confidence in the jury's verdict remains intact. Thus, Tucker has failed to meet the third prong of the *Brady* analysis that he was prejudiced by the suppression of evidence by the Commonwealth.

B. The trial court also did not err by denying Tucker's motion for a new trial based on Fisher's new testimony.

A motion for a new trial based on after-discovered evidence "is a matter submitted to the sound discretion of the circuit court" and will be granted only under unusual circumstances after particular care and caution has been given to the evidence presented. *Bagley v. Commonwealth*, 73 Va. App. 1, 22 (2021) (quoting *Orndorff v. Commonwealth*, 279 Va. 597, 601 (2010); *see Johnson v. Commonwealth*, 41 Va. App. 37, 43 (2003) ("Motions for new trials based upon after-discovered evidence . . . are awarded with great reluctance." (quoting *Odum v. Commonwealth*, 225 Va. 123, 130 (1983)))). "Because the granting of such a motion is addressed to the sound discretion of the trial court, that decision will not be reversed absent an abuse of discretion." *Johnson*, 41 Va. App. at 43.

To preserve finality in court adjudications, a new trial will only be granted based upon newly-discovered evidence if "(1) the evidence was discovered after trial; (2) it could not have been obtained prior to trial through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative or collateral; and (4) is material, and as such, should produce an opposite result on the merits at another trial." *Id.* (quoting *Mundy v. Commonwealth*, 11 Va. App. 461, 480, *aff'd on reh'g en banc*, 399 S.E.2d 29 (1990)). "The burden is on the moving

party to show that all four of these requirements have been met in order to justify a new trial."

*Id*.

Fisher's new testimony does not rise to this standard. Although the new testimony was offered after trial, Fisher did testify at trial. In addition, Fisher's trial testimony was corroborated by his statements to police and voicemail to his girlfriend immediately after the shooting. As noted in *Fout v. Commonwealth*, 199 Va. 184, 192 (1957), "[t]he opportunity and temptation for fraud are so obvious that courts look with suspicion upon such an asserted repudiation of the testimony of a witness for the prosecution, and this is so even though the repudiation be sworn to." Here, there was evidence that Fisher had received threats and indeed was shot at after the trial, which the trial court determined impacted the credibility of his new testimony and ultimately the trial court found that the recantation was not a complete recantation. In his new testimony, Fisher never stated that Tucker did not shoot him or that Tucker was not present. Instead, Fisher merely claimed that he did not remember who shot him. As the trial court noted, statements like "I don't recall" and "I don't remember" are different than "he didn't shoot me." We agree with the trial court that Fisher's new testimony was not material to the trial outcome. We therefore do not believe the trial court abused its discretion in failing to award a new trial based on Fisher's new testimony.

C. Because there was no error below, Tucker is not entitled to reversal of the imposition of his suspended sentences.

"[T]he authority of the trial court to revoke [an] appellant's suspended sentence is one of statutory interpretation and presents a pure question of law, which this Court reviews *de novo*." *Hodgins v. Commonwealth*, 61 Va. App. 102, 107 (2012). Probation statutes provide a remedial tool in the rehabilitation of criminals and, to that end, should be liberally construed. *Wright v. Commonwealth*, 32 Va. App. 148, 151 (2000). The only error assigned to the revocation of the suspended sentences was that the suspended sentences followed the jury's conviction of Tucker

on the aggravated malicious wounding and firearm charges, which Tucker contends was reached in violation of *Brady* and his right to a new trial. Because we find no error on these issues, there is no basis asserted to overturn the revocations and we affirm.

CONCLUSION

We hold that the alleged late disclosures of evidence did not violate the requirements of *Brady* nor was the alleged newly discovered evidence a basis for a new trial. Accordingly, we affirm the judgment of the trial court.

*Affirmed.*