# COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Friedman and Raphael
Argued at Richmond, Virginia

BRYAN ALLEN PITTMAN

MEMORANDUM OPINION[*] BY
JUDGE CLIFFORD L. ATHEY, JR.
v.        Record No. 1501-22-2                       MAY 7, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF NORTHUMBERLAND COUNTY
R. Michael McKenney, Judge

Charles E. Haden for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Sitting without a jury, the Circuit Court of Northumberland County ("trial court") convicted

Bryan Allen Pittman ("Pittman") of three counts of aggravated sexual battery of a child under 13

years of age, two counts of sodomy of a child under 13 years of age, and two counts of object sexual

penetration of a child under 13 years of age. The trial court sentenced Pittman to be incarcerated for

240 years with all but 20 years of the sentence suspended. On appeal, Pittman contends that the

evidence was insufficient to convict him due to the victim's inherent incredibility. He further

contends that the trial court erred by denying his motion to vacate the convictions based upon the

discovery of new evidence. For the following reasons we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

## I. BACKGROUND[1]

In the fall of 2020, Pittman moved in with his uncle Wade Bryan ("Bryan"), Bryan's fiancée, and their two children, S.B. and N.B. While residing with his uncle's family, Pittman slept on a red couch in their living room. Although Pittman spent a great deal of time with both children, he developed a much closer relationship with ten-year-old S.B. Pittman gave S.B. expensive presents including a $150 gold necklace, and S.B. followed him around the home, often sitting pressed against him on the couch. In fact, S.B. was later described as being infatuated with Pittman.

One night, Bryan heard S.B. "yelp," causing him to walk into the living room where he found Pittman apparently sitting alone on the couch. Bryan asked about the "yelp" he had heard, and Pittman pulled back his blanket revealing S.B. Pittman then admonished S.B., and along with Bryan, told S.B. that she needed to go to bed.

The following morning, Bryan advised Pittman that the previous night's events were "not cool" and requested that Pittman reside elsewhere on the weekends. Pittman apologized to Bryan and moved out of the home within days of their conversation. That weekend, Bryan, S.B., and N.B. traveled to Pennsylvania to bring Bryan's fiancée home. On the return trip to Virginia, the parents asked S.B. about the recent incident which occurred on the couch with Pittman. S.B. then revealed to her parents a series of sexual acts perpetrated by Pittman against her.

S.B. ultimately disclosed that every few nights, Pittman gave her "long kisses" that lasted "[a]bout a minute," and that while kissing her, he touched her where she would "pee." S.B. also told her parents that "every few nights" Pittman put "part of his hand" inside of her and would use

---

[1] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

his fingers. She also advised them that Pittman had previously told her not to tell anyone or "he would go to jail." In addition, S.B. confided that on more than one occasion, Pittman had asked her to touch his penis and had twice put his penis in her mouth. Finally, she revealed that Pittman had placed his mouth on areas "covered by [her] bathing suit."

At trial, Larry Headley, Jr. ("Headley"), who had been incarcerated with Pittman while awaiting trial, testified that Pittman had confessed that he was in jail for "messing with" a ten-year-old girl and that "he had slept with her and busted her open." Headley also testified that Pittman told him that S.B.'s father, a sex offender, was also molesting her.[2] Finally, Headley stated that Pittman advised that he had "only told [Headley] that [he] did it."

Another inmate, called by Pittman, stated that Pittman had repeatedly denied the allegations while awaiting trial. Pittman also testified in his own defense, denying that he had made any of the statements attributed to him by Headley and further denying that he had ever touched S.B. inappropriately. Pittman did, however, acknowledge the incident on the couch but claimed that he had been asleep and had not known S.B. was present under the blanket. Pittman also conceded that S.B. may have previously seen his penis when he urinated outside or when she came into the bathroom while he showered.

Pittman moved to strike based on alleged inconsistencies in S.B.'s testimony, including both her inability to provide a specific time frame as well as her lack of emotion while testifying. The trial court denied the motion to strike and explicitly found "the victim to have been credible," while noting "inconsistencies in Mr. Pittman's testimony." Following closing statements, the trial court convicted Pittman on three counts of aggravated sexual battery of a child under 13 years of age, two

---

[2] Bryan was on the sex offender registry for an unrelated crime involving a minor child.

counts of sodomy of a child under 13 years of age, and two counts of object sexual penetration of a child under 13 years of age.[3]

Prior to sentencing, Pittman moved the trial court to set aside his convictions and grant a new trial due to after-discovered evidence. In support of this motion, Pittman proffered the signed statement of John Harwood III ("Harwood"), alleging Headley's reputation for "being a jailhouse 'snitch' and an informant." Harwood further claimed to have had a conversation with Headley after Pittman's trial in which Headley purportedly said "that he was trying to get money [and] time off of his sentence" and that he "didn't care if it ruined Mr. Pittman's life." Headley allegedly indicated to Harwood that his previous testimony "was not true because he didn't know" Pittman.

The trial court denied the motion to set aside the verdict and grant a new trial, noting that although the allegations in the motion called the credibility of Headley's testimony into question, Headley's testimony on the whole had included specific information including "indicat[ing] that [Pittman] had slept with a ten-year-old girl while he was sleeping or living on the couch in her home" and that "Pittman" had told him "that the child had been sexually active since she was six." In support of the credibility of Headley's testimony, the trial court noted that Headley would have had no way of knowing "where . . . Pittman was living in the house" or "the age of the child without having the indictment in front of them" had the statements not been made to him by Pittman. The trial court also noted that Headley was a "veteran of the Virginia Correction System" who may have lied to Harwood, since "being designated as a snitch is not necessarily beneficial for your long-term health." Further, even "[i]f [it] had set aside Mr. Headley's statements entirely," the trial court still would have convicted Pittman because "the victim's testimony [was] credible and Mr. Pittman's testimony incredible." The trial court further opined that "the child victim's testimony was clear,"

---

[3] Pittman was acquitted of one count of object sexual penetration of a child under 13 years of age and one count of sodomy of a child under 13 years of age.

"precise," and "contained adequate evidence to satisfy each of the elements standing alone to find Mr. Pittman guilty." Finally, the trial court "did not find that the [d]efense had adequately addressed or shattered the credibility of the victim, to the point where her testimony was not accepted by the [trial court] in its entirety."

Consequently, the trial court sentenced Pittman to a total of 240 years of incarceration with all but 20 of those years suspended. Pittman appealed.

II. ANALYSIS

A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Rule 3A:15(c) requires a trial court to "grant a new trial if it sets aside the verdict" based on after-discovered evidence. A motion for a new trial based on after-discovered evidence "is a matter submitted to the sound discretion of the circuit court." *Bagley v. Commonwealth*, 73

Va. App. 1, 22 (2021) (quoting *Orndorff v. Commonwealth*, 279 Va. 597, 601 (2010)); *see Johnson v. Commonwealth*, 41 Va. App. 37, 43 (2003) ("Motions for new trials based upon after-discovered evidence . . . are not looked upon with favor, are considered with special care and caution, and are awarded with great reluctance." (quoting *Odum v. Commonwealth*, 225 Va. 123, 130 (1983))). "Because the granting of such a motion is addressed to the sound discretion of the trial court, that decision will not be reversed absent an abuse of discretion." *Johnson*, 41 Va. App. at 43.

B. *The evidence was sufficient to prove Pittman's guilt on all seven felony counts.*

Pittman challenges the sufficiency of the evidence underlying his convictions. He does not contend that S.B.'s testimony, if credible, would be insufficient to support his convictions for sodomy of a child under 13 years of age, object sexual penetration of a child under 13 years of age, or aggravated sexual battery of a child under 13 years of age. Instead, Pittman contends that S.B.'s testimony, which constituted most of the Commonwealth's evidence, was inherently incredible as a matter of law. Specifically, he focuses on the five-month delay in S.B.'s disclosure and the lack of specific details surrounding the assaults. For the following reasons, we disagree.

"[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (*quoting Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, this Court must accept 'the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "[W]e may only disturb the trial court's credibility determination if the evidence is 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Lopez v. Commonwealth*, 73 Va. App. 70, 84 (2021)

(quoting *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Though Pittman characterizes S.B.'s delay in reporting as "long" and "possibly up to five months," "[t]he mere fact that a witness may have delayed in reporting knowledge of a case or given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415; *see also Love v. Commonwealth*, 18 Va. App. 84, 90 (1994) (holding that the victim's seven-year delay in reporting abuse did not render her testimony inherently incredible). Instead, such circumstances are "appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine." *Juniper*, 271 Va. at 415. Further, Pittman's argument neglects the evidence that the abuse was ongoing. S.B. did not delay her disclosure by five months. Instead, after her father found her in Pittman's company under concerning circumstances, she disclosed an ongoing course of abuse.

In addition, the trial court addressed the alleged vagueness of S.B.'s testimony when announcing its verdict. The trial court explained that it was dismissing one count of object sexual penetration because S.B.'s lack of "clarity about things" would require it "to speculate on" whether there was a third act of object penetration when the testimony specifically described two such incidents. Similarly, the trial court acquitted Pittman of one count of sodomy because while S.B. "testified that . . . [Pittman] placed his mouth on the area—and these are her words—where she peed, there's no description of any of the actions which might be defined as stimulation." Thus, the trial court clearly considered the lack of specific details and still found S.B. to be credible.

Pittman next contends the Commonwealth "failed to exclude the reasonable hypothesis of innocence that S.B. simply made up the allegations against" him. Yet "[t]he Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley*, 69 Va. App. at 629 (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). Further, "it is the *fact finder*, not this Court, that determines whether a defendant's hypothesis is reasonable." *Fary v. Commonwealth*, 77 Va. App. 331, 347 (2023) (en banc). "Giving due deference to the trier of fact, this Court may only review a factual finding to determine if it is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Commonwealth v. Moseley*, 293 Va. 455, 466 (2017)). The trial court explicitly found that S.B. was "a credible witness and that her testimony had not been impeached in any way." Accordingly, Pittman fails to meet the high burden of showing that S.B.'s testimony was inherently incredible as a matter of law.

C. *The trial court did not err in denying Pittman's motion to set aside the convictions and grant a new trial.*

Pittman also contends that the trial court erred by denying his motion to set aside his convictions and grant a new trial based on after-discovered evidence. For the following reasons, we disagree.

Rule 3A:15(c) requires a trial court to "grant a new trial if it sets aside the verdict" based on after-discovered evidence. To preserve finality in court adjudications, a new trial will only be granted based upon after-discovered evidence if "(1) the evidence was discovered after trial; (2) it could not have been obtained prior to trial through the exercise of reasonable diligence; (3) it is not merely cumulative, corroborative or collateral; and (4) is material, and as such, should produce an opposite result on the merits at another trial." *Johnson*, 41 Va. App. at 43 (quoting *Mundy v. Commonwealth*, 11 Va. App. 461, 480, *aff'd on reh'g en banc*, 399 S.E.2d 29

(1990)). "The burden is on the moving party to show that all four of these requirements have been met in order to justify a new trial." *Id.*

Here, the record establishes that the after-discovered evidence would not have resulted in an acquittal therefore we need not address the first three prongs of the four-part test. Although Pittman endeavored to show the trial court that Headley was lying—thus invalidating his testimony—Headley's testimony was not necessary to sustain Pittman's convictions. As this Court has held, "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)). The trial court found S.B.'s testimony was "clear and precise," and although "[h]er credibility was challenged," it was "never really successfully overcome." Further, the trial court specifically found that, even without Headley's testimony, the evidence would *still* have been sufficient to convict. Even if the trial court "had set aside Mr. Headley's statements entirely, [it] still, in finding the victim's testimony credible and Mr. Pittman's testimony incredible, would have found Mr. Pittman guilty." *Cf. Deville v. Commonwealth*, 47 Va. App. 754, 757 (2006) ("[W]e need not hypothesize how a reasonable jury would likely have reacted to the new information" when "[w]e know with certitude, from the factfinder himself, that the outcome of the proceeding would not have been different had the evidence been disclosed earlier."). Accordingly, we hold that the trial court did not abuse its discretion by denying Pittman's motion to set aside his convictions based on after-discovered evidence.

### III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*