COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present: Chief Judge Huff, Judges Petty and McCullough
Argued by teleconference

DARIUS ONEIL DALTON

v.     Record No. 2385-13-3

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE GLEN A. HUFF
MARCH 31, 2015

FROM THE CIRCUIT COURT OF THE CITY OF RADFORD
Josiah T. Showalter, Jr., Judge

Terry N. Grimes (Terry N. Grimes, Esq., P.C., on briefs), for
appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Following a jury trial in the Circuit Court of the City of Radford ("trial court"), Darius

Oneil Dalton ("appellant") was convicted of distribution of cocaine, in violation of Code

§ 18.2-248(C), and sentenced to five years' incarceration. On appeal, appellant presents the

following assignments of error:

1. The trial court abused its discretion by admitting certain text messages
   as each contained inadmissible hearsay and was admitted without
   proper foundation and authentication.

2. The trial court abused its discretion by permitting Paul Warren to
   testify as to the contents of a text message, not produced in discovery,
   and without accounting for its absence in violation of the best evidence
   rule.

3. The trial court erred by failing to grant [appellant's] motion to strike
   and set aside the verdict as the evidence was insufficient to support a
   finding beyond a reasonable doubt that [appellant] distributed cocaine.

For the following reasons, this Court affirms the rulings of the trial court.

## I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

On October 24, 2011, Radford City police officers executed a search warrant at a house where Paul Warren ("Warren") was living with three roommates. The search commenced after Warren accepted a package of marijuana sent through the mail. After the search, Detectives Eric Martin ("Martin") and Jimmy Smith ("Smith") asked Warren whether he would be willing to work as a "confidential informant" in exchange for "consideration" of his charges.[1] Warren agreed to do so and provided the officers with the name of a man he knew only as "Streetz."

Warren testified that "[Streetz] used to live behind [his] house" while Warren was a student at Radford. Warren testified that he met Streetz "face-to-face" "about 100 times." Additionally, Warren testified that he had communicated with Streetz via phone calls and text messages "hundreds" of times. At appellant's trial, Warren identified appellant as the man he knew as "Streetz."

Warren additionally testified that, as a confidential informant and pursuant to the direction of the officers, he texted appellant to ask if he could "get a G,"[2] to which appellant responded, "[y]eah." Appellant objected to this testimony, arguing that "[w]e need the text" because Warren's testimony was "not the best evidence." The trial court overruled this objection. On

---

[1] No specific promises were made to Warren, only this his cooperation would result in "consideration" of his charges.

[2] A "G" is a reference to one gram of cocaine.

cross-examination, Warren testified that he could not produce these text messages because he no longer had that phone.

Appellant agreed to sell Warren one gram of cocaine for $55. Consequently, Martin and Smith searched Warren and his vehicle to ensure he had no existing cocaine about his person, gave Warren $55 in cash to make the purchase from appellant, and equipped Warren with audio equipment to record the buy. Warren then drove to Apartment L at 1205 Clement Street, which he identified as Streetz's apartment and testified that he had been to it roughly "[f]ifty" times. Martin and Smith followed appellant in an unmarked police vehicle while listening to the live audio feed.

After Warren arrived, appellant's roommate, Jaleesa Coverdale ("Coverdale"), opened the door and let Warren inside. Warren walked into the kitchen where appellant was weighing out one gram of cocaine. As appellant was doing so, Warren told appellant that he had just "aced" an exam in his "ECON 106" class. Appellant responded by informing Warren that he took the same class when he was at Radford and asked whether the same professor was still teaching it.[3] Additionally, the two men discussed a NASCAR race that was taking place that weekend in Martinsville, VA, appellant's plans to go home for the weekend, and the possibility of future drug transactions. Finally, as he was leaving the apartment, Warren said goodbye to Coverdale and "Streetz."

After the controlled buy, Warren gave Martin and Smith a clear plastic bag containing 0.924 gram of a white, powdery substance later determined to be cocaine. The officers searched Warren and his vehicle again to ensure that he did not have any other drugs or money.

Appellant testified on his own behalf at trial. Specifically, he admitted that he lived with Coverdale in Apartment L at 1205 Clement Street in October 2011, that he had attended Radford University where he took ECON 106, and that he had met Warren. Appellant denied selling

---

[3] At trial, appellant's transcript was entered into evidence to confirm that he had taken ECON 106 at Radford in the Fall of 2009.

cocaine to Warren, denied that his voice could be heard on the audio tape, denied that Warren was ever inside of his apartment, and denied using the nickname "Streetz." Additionally, appellant was unable to state whether he was home on the day of the controlled buy – October 25, 2011 – and suggested that he and Coverdale might have been at a friend's house, out to eat, or at one of "many different places." He further suggested that his taking ECON 106 at Radford and knowing about the race in Martinsville were coincidences.

During the Commonwealth's case-in-chief, appellant objected to the admission into evidence of two screenshots[4] of text messages that Warren received on his cell phone. The text messages were from someone purporting to be "streets" in the first screenshot and "streetz" in the second. The messages informed Warren that "streetz" had lost his old phone, had gotten a new number, and was requesting that Warren provide "streetz" with "mikez" and "kellemz" phone numbers. Warren replied to these messages with a phone number.

Warren testified that the messages, which were sent two months after the controlled drug buy, were sent by appellant. Appellant objected to the admission of these screenshots into evidence on hearsay grounds, arguing that the Commonwealth had not laid an adequate foundation because the messages had not been tied to appellant and were not relevant because they were "beyond the scope of the indictment." The trial court overruled these objections.

At the conclusion of all the evidence, appellant moved to strike the evidence as insufficient to support a conviction. In denying this motion, the trial court noted that this case turned on credibility determinations. After the jury convicted appellant, he filed a motion to set aside the verdict, arguing that he "should not have been convicted based upon the [un]corroborated testimony of . . . Warren" and that the trial court erred by admitting the two screenshots into evidence because

---

[4] A screenshot, sometimes called a screen capture, is an image of a cell phone's screen that is saved as a graphic file in the phone's photographs.

they were not produced before trial, were not properly authenticated, contained hearsay, and were offered without any context.  In denying this motion, the trial court cited the jury's responsibility to judge the credibility of the witnesses and the weight of the evidence.  This appeal followed.

## II.  ANALYSIS

### A.  Authentication of Text Messages

On appeal, appellant first contends that the trial court erred by allowing into evidence two screenshots of text messages sent to Warren's phone.  Specifically, appellant argues the text messages in the screenshots constituted hearsay because they could not be authenticated as being sent to Warren by appellant.  Assuming without deciding that the trial court abused its discretion by admitting the text messages,[5] this Court nevertheless affirms the trial court's judgment as harmless error.

"'No trial is perfect, and error will at times creep in.'"  Lavinder v. Commonwealth, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (quoting Parsons v. Commonwealth, 154 Va. 832, 852, 152 S.E. 547, 554 (1930)).  "'Every man is entitled to a fair trial and to nothing more, and so . . . out of the imperative demands of common sense, has grown the doctrine of harmless error.'"  Id. (quoting Oliver v. Commonwealth, 151 Va. 533, 541, 145 S.E. 307, 309 (1928)) (omission in original).  As "[t]he effect of an error on a verdict varies widely 'depending upon the circumstances of the case,' . . . [e]ach case must . . . be analyzed individually to determine if an error has affected the verdict."  Id. (quoting Commonwealth v. Story, 383 A.2d 155, 164 (Pa. 1978)).

---

[5] Although this Court is not bound by a party's concession of law, Crawford v. Commonwealth, 55 Va. App. 457, 481-82, 686 S.E.2d 557, 569 (2009), the Attorney General in the present case conceded that the text messages did not have an adequate foundation and were, therefore, erroneously admitted.

Code § 8.01-678, Virginia's harmless error statute, provides that

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . (2) For any other defect, imperfection, or omission in the record, or for any error committed on the trial.

Code § 8.01-678 has been applied in both criminal and civil cases. See, e.g., Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997). "In a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the jury." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) (quoting Code § 8.01-678).

Accordingly, in Virginia the test for non-constitutional harmless error under Code § 8.01-678 in a criminal case, as adopted by the Supreme Court in Clay, is as follows:

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the conviction cannot stand."

262 Va. at 260, 546 S.E.2d at 731-32 (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

In the present case, the admission of the screenshots into evidence was harmless error. The evidence established that Warren had met a man he knew as "Streetz" face-to-face approximately a hundred times before October 25, 2011. Then, during the controlled buy, Warren can be heard saying, "Alright, Streetz," as he is leaving the apartment – an apartment where appellant admitted to living at the relevant time. Additionally, at trial, Warren testified

that appellant was the man he knew as Streetz and that appellant had sold him one gram of cocaine for $55 on October 25, 2011. Far from being powerfully incriminating evidence, these screenshots were of marginal significance. At best, the screenshots provided some corroboration for Warren's testimony that he had been communicating with someone he called "Streetz." Notwithstanding, the text messages were cumulative of otherwise overwhelming evidence admitted at trial. See Dearing v. Commonwealth, 260 Va. 671, 673, 536 S.E.2d 903, 904 (2000) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (stating that one of the factors to consider in a constitutional harmless error analysis is whether the evidence was cumulative)); see also Schwartz v. Schwartz, 46 Va. App. 145, 159, 616 S.E.2d 59, 66 (2005) (One measure of harmlessness is "if other evidence of guilt is so 'overwhelming' and the error so insignificant by comparison . . . we can conclude that the error 'failed to have any substantial influence on the verdict.'" (quoting United States v. Lane, 474 U.S. 438, 450 (1986))).

Given the circumstances of this case, it "'plainly appears from the record and the evidence given at the trial that the parties . . . had a fair trial on the merits and substantial justice has been reached.'" Lavinder, 12 Va. App. at 1005-06, 407 S.E.2d at 911 (quoting Code § 8.01-678). As such, this Court is confident "'that the error did not influence the jury, or had but slight effect . . . .'" Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764).

## B. Best Evidence Rule

Next, appellant contends that the trial court erred by allowing Warren to testify regarding the contents of a text message he sent to appellant. Specifically, appellant argues that the text message constituted a writing, and, therefore, an original of the text itself must be introduced before Warren's testimony regarding the contents will be allowed under the best evidence rule.

"Generally, the admissibility of evidence is within the discretion of the trial court," and an appellate court will not reject the trial court's decision absent an abuse of discretion. Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010). A "trial judge's ruling will not be reversed simply because an appellate court disagrees." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). Instead, a reviewing court can only conclude that an abuse of discretion has occurred in cases where "reasonable jurists could not differ" about the correct result. Id.

The "best evidence rule," which made its appearance in the English law in the early part of the eighteenth century, was not originally a "rule," but rather "a general observation to the effect that when one sets out to prove something, one ought to prove it by the most reliable evidence available." Charles E. Friend, Kent Sinclair, The Law of Evidence in Virginia § 18-1 (7th ed. 2012). Comments to this effect appear in the earliest Virginia cases: "[t]he best evidence which the nature of the case admits of, ought to be produced, and if it may be produced, inferior testimony is inadmissible." Lee v. Tapscott, 2 Va. 276, 280-81 (1796).

Today, however, this rule is much narrower. Indeed, it is well-established in modern practice that "the best evidence rule in Virginia applies only to writings . . . ." Brown v. Commonwealth, 54 Va. App. 107, 116, 676 S.E.2d 326, 330 (2009). "As a legal term of art, 'the best evidence rule requires that where the contents of a writing are desired to be proved, the writing itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted.'" Id. at 115, 676 S.E.2d at 330 (quoting Bradshaw v. Commonwealth, 16 Va. App. 374, 379, 429 S.E.2d 881, 885 (1993)). The definition and scope of the best evidence rule have been succinctly summarized in Rule 2:1002, which provides that "[t]o prove the content of a writing, the original writing is required, except as otherwise provided in these rules, Rules of the Supreme Court of Virginia, or in a Virginia statute."

In the present case, appellant argues that Warren's testimony regarding the contents of the text message should have been inadmissible under the best evidence rule unless an original of the text itself was first admitted. "No Virginia appellate court," however, has "determined whether a text message [constitutes] a 'writing' for the purposes of the best evidence rule." See Cobb v. Commonwealth, No. 1526-12-1, 2013 Va. App. LEXIS 301, at *14 (Va. Ct. App. Oct. 22, 2013) (assuming without deciding that a text message qualifies as a writing).

"For purposes of [the best evidence rule]," Rule 2:1001(1) broadly defines "writings" as "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation or preservation." This Court has noted that "[t]he potentially limitless application of computer technology to evidentiary questions will continually require legal adaptation." Penny v. Commonwealth, 6 Va. App. 494, 499, 370 S.E.2d 314, 317 (1988). Even the text of Rule 2:1001(1) acknowledges advancements in computer technology by providing that a "writing" may be produced not only by handwriting, but also by electronic recording.

Considering these circumstances, it is readily apparent that text messages fall within Rule 2:1001(1)'s broad definition as they consist of letters, words, and numbers set down by electronic recording.[6] Notably, other state and federal courts, applying similar rules of evidence, have also determined that text messages constitute writings for the purposes of the best evidence rule. See United States v. Harry, 927 F. Supp. 2d 1185, 1227 (D. N.M. 2013) (applying the best evidence rule to text messages); Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 577 (D. Md. 2007); State v. Espiritu, 176 P.3d 885, 893 (Haw. 2008) (noting that the best evidence rule is

---

[6] "Electronic" is defined as "of or relating to electronics . . . utilizing devices constructed or working by the methods or principles of electronics." Webster's Third New International Dictionary 733 (3d ed. 2002).

"particularly suited" to electronic evidence and admitting testimony about text messages under the best evidence rule when original messages and cell phone were unavailable and there was no evidence of proponent's bad faith); Laughner v. State, 769 N.E.2d 1147, 1159 (Ind. Ct. App. 2002) (holding that text messages sent between computers through an internet chat room were subject to the original writing rule and a printout of the messages was an original for purposes of that rule), cert. denied, 538 U.S. 1013 (2003), abrogated on other grounds by Fajardo v. State, 859 N.E.2d 1201 (Ind. 2007). Accordingly, this Court holds that text messages constitute writings for the purposes of the best evidence rule.[7]

This does not end our inquiry, however. Under the best evidence rule, "'where the contents of a writing are desired to be proved, the writing itself must be produced *or its absence sufficiently accounted for* before other evidence of its contents can be admitted.'" Brown, 54 Va. App. at 115, 676 S.E.2d at 330 (emphasis added) (quoting Bradshaw, 16 Va. App. at 379, 429 S.E.2d at 885). Indeed, Rule 2:1004 provides a list of exceptions where an

> original is not required, and other evidence of the contents of a writing is admissible . . . :
>
> (a) *Originals lost or destroyed.* All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or
>
> (b) *Original not obtainable.* No original can be obtained by any available judicial process or procedure, unless the proponent acted in bad faith to render the original unavailable; or
>
> (c) *Original in possession of opponent.* At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or

---

[7] It is not necessary under the facts of the present case to determine what would have constituted an "original" of the text messages to satisfy the best evidence rule.

(d) *Collateral matters.* The writing is not closely related to a controlling issue.

(Emphasis in original). "The test of unavailability is proof with reasonable certainty," Bradshaw, 16 Va. App. at 380, 429 S.E.2d at 885, and this question – a preliminary issue regarding the admissibility of evidence – is "addressed to the sound discretion of the trial court," Rule 2:104(a).

In the present case, Warren testified that he could not produce the text messages because he did "not have that phone any longer," and therefore did not have the messages either. As such, Rule 2:1004(a) and (b) are applicable to the present context as the text messages were both lost and unattainable. Indeed the exceptions of Rule 2:1004 are particularly suited to electronic evidence given the myriad of ways that electronic records may be deleted, lost, or purged as a result of routine electronic records management. Additionally, there is no evidence which suggests that the absence of the text messages in the present case was a result of bad faith. Accordingly, this Court cannot say that the trial court abused its discretion by allowing Warren's testimony regarding the content of the text messages because there was sufficient accounting for the absence of the text messages.

### C. Sufficiency of the Evidence

Lastly, appellant contends that the evidence was insufficient to support his conviction for distribution of cocaine. Specifically, he argues that because of the lack of physical evidence and Warren's inherently incredible testimony, appellant's conviction should be reversed.

Our standard for reviewing the sufficiency of the evidence is firmly established:

> [W]hen the sufficiency of the evidence is challenged on appeal, the evidence and all reasonable inferences fairly drawn therefrom must be viewed in the light most favorable to the Commonwealth. The trial court's judgment should be affirmed unless it appears that it is plainly wrong or without evidence to support it.

- 11 -

Spencer v. Commonwealth, 238 Va. 275, 283, 384 S.E.2d 775, 779 (1989) (citations omitted). Additionally, under this familiar standard of review, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id.

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). Therefore, this Court will not disturb the fact finder's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible." Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999). Indeed, "[t]he living record contains many guideposts to the truth which are not in the printed record," and an appellate court, not having the benefit of these guideposts, "should give great weight to the conclusions of those who have seen and heard them." Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955).

In the present case, Warren, after testifying that he had seen appellant face-to-face approximately a hundred times, identified appellant in court as the man he knows as "Streetz." Subsequently, Warren testified that at the direction of Martin and Smith, he went to appellant's apartment where appellant sold Warren approximately one gram of cocaine for $55. This testimony is corroborated by the audio recording and by the fact that Warren was searched by the officers before and after the controlled buy. Moreover, in the audio recording, Warren can be heard saying goodbye to "Streetz." This evidence is sufficient to support appellant's conviction for distribution of cocaine.

Nevertheless, appellant points to the numerous instances in which Warren's testimony was impeached and argues that this testimony was therefore not sufficient to support appellant's conviction. As the Supreme Court has explained, however,

> [w]hen the law says that it is for the trier of fact to judge the credibility of a witness, the issue is not a matter of degree. So long as a witness deposes as to facts, which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contrary statements affects only the witness' credibility . . . [and] the weight and sufficiency of the testimony. If the trier of the facts sees fit to base the verdict upon that testimony, there can be no relief in the appellate court.

Simpson v. Commonwealth, 199 Va. 549, 557-58, 100 S.E.2d 701, 707 (1957); see also Burke v. Scott, 192 Va. 16, 23-24, 63 S.E.2d 740, 744 (1951). In this case, the jury saw fit to convict appellant based on Warren's testimony, and this Court will not reverse this conviction because it is not plainly wrong or without evidence to support it.

## III. CONCLUSION

For the foregoing reasons, this Court affirms the rulings of the trial court.

Affirmed.