UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Athey and Callins

RAHYEEM DAMON PORTER

v.       Record No. 1132-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
AUGUST 16, 2022

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

(Trevor Jared Robinson, on brief), for appellant.

(Jason S. Miyares, Attorney General; Sharon M. Carr, Assistant
Attorney General, on brief), for appellee.

The trial court convicted Rahyeen Damon Porter ("Porter") of one count of burglary, one

count of malicious wounding, two counts of use of a firearm in the commission of a felony, one

count of brandishing a firearm, one count of reckless handling of a firearm, four counts of

contributing to the delinquency of a minor, and one count of misdemeanor damage to property or a

monument.  He asserts the evidence is insufficient to support the trial court's judgment.  After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit."  Code § 17.1 403(ii)(a); Rule 5A:27(a).

For the following reasons, we affirm Porter's convictions.

I.  BACKGROUND

In early 2020, Latasha Ferebee ("Ferebee") was in a relationship with Porter.  Porter

testified that, "at one point," he lived with Ferebee and her family, including her mother,

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Veraline Morgan ("Morgan"). By July 22, 2020, the relationship was over, and Porter was no longer living with Ferebee and her family.

At approximately 3:00 a.m. on July 22, 2020, Porter appeared in Ferebee's bedroom without warning. Ferebee and her friend, Larry Sutton ("Sutton"), were still awake, but had not heard any "commotion" because two fans were running in the bedroom. Porter looked at Sutton and stated, "I'm going to kill your bitch."[1] During the confrontation, Porter pulled "a long black gun" from his pants and pointed it at Ferebee's face. Ferebee's sixteen-year-old daughter "jumped in front of" Ferebee, prompting Ferebee to push her daughter aside and back Porter up to the hallway. Ferebee shut the door behind Porter, leaving him in the hall with Morgan, Ferebee's other children, and their friends. Ferebee stated that her children and mother were screaming.

After approximately "thirty to forty minutes," Porter attempted to enter Ferebee's bedroom again. Ferebee, her sixteen-year-old daughter, and Sutton tried to hold the door shut, but Porter kicked it until it cracked open. Reaching through the door, he struck Ferebee in the head with his gun. Dazed, Ferebee directed her daughter to call 911. Ferebee spoke with the 911 operator and reported that Porter had struck her in the head with a gun and "threatened to kill everyone." She identified Porter as her assailant and told the 911 operator that he was dressed in jeans, a baseball cap, and a white shirt with red flowers. Shortly thereafter, Porter fled the scene.

Ferebee remained on the 911 call until emergency personnel arrived. While Ferebee was in the ambulance, she saw Porter standing on the sidewalk near her home and notified the police. Ferebee noted that he was dressed in different clothes than he had been when he was inside her

---

[1] On cross-examination, Ferebee admitted that she did not include Porter's verbal threat to kill her in her preliminary hearing testimony. She conceded further that she had testified previously he had the gun "out," but did not specify that it was pointed at her face.

home, but she recognized him because she was familiar with his appearance from their former relationship.

Porter was arrested, and Ferebee was transported to the hospital where she was treated for a concussion and a laceration on her head. The laceration required four or five stitches and left her with a scar. At trial, Ferebee identified Porter as the intruder who broke into her home and struck her in the head with a gun.

Morgan corroborated Ferebee's testimony. She testified that, in the early morning hours of July 22, 2020, she awoke to the sound of her grandchildren screaming. When she left her bedroom, she discovered Porter in the house. Morgan confronted Porter and forced him to leave, locking the front door behind him, but he kicked the door open and re-entered the house.

Morgan stated that Porter had a black gun, but he could not load the bullets properly. As he struggled to load the gun, Morgan "tussl[ed]" with him to prevent him from reaching Ferebee. Porter "pushed [Morgan] real hard," knocking her against the wall, and forced Ferebee's door open. Morgan saw Porter strike Ferebee in the head with the gun. When asked if she was certain that the assailant was Porter, Morgan replied, "I'm very sure," stressing that she was "right there in his face" and that she was familiar with his appearance. Morgan testified that Porter fled when he learned that the police were coming.

Porter testified in his own behalf. He denied that he entered Ferebee's home on the night of July 22, 2020, or that he possessed a firearm that night. He maintained that, when Ferebee directed the police's attention to him outside her home, he was visiting a friend who lived near Ferebee. Porter stated that he stepped outside the friend's home when he saw emergency responders in the area. Porter presented evidence that he was dressed in a white tank shirt when the police arrested him and denied that he owned a white shirt with red flowers. He admitted he had previously been convicted of a crime involving moral turpitude.

At the conclusion of the evidence, the trial court adopted the Commonwealth's evidence identifying Porter as the perpetrator. The trial court emphasized that Porter was identified as the assailant in the 911 call transcript, and it could not "fathom [that] they would get on 911 and pin it on [him]" "in the excitement of the moment" when neither Ferebee nor Morgan had any reason to fabricate their accounts. The trial court stressed further that Porter was motivated to testify falsely and that he easily could have discarded the flowered shirt before he was arrested in his white "undershirt." The trial court convicted Porter of all charges. This appeal followed.

## II. ANALYSIS

Porter asserts that the evidence was insufficient to support his convictions because the testimony of the witnesses identifying him as the perpetrator was inherently incredible. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "When 'credibility issues have been resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal

- 4 -

unless plainly wrong.'" *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011) (quoting *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991)).

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)). The factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), are used to determine "whether the identification evidence is sufficient, standing alone or in combination with other evidence, to prove beyond a reasonable doubt" the identity of the perpetrator. *Brown*, 37 Va. App. at 522.

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200.

The record before us demonstrates that Porter lived with Ferebee and Morgan until shortly before the offenses, and they were both familiar with his appearance. Ferebee stated that the lights were on inside her bedroom when Porter entered and she saw him at close range and heard him speak; further, when she called 911, she specifically identified him as her assailant. Ferebee identified Porter a second time when she saw Porter outside her home after the police arrived. Morgan testified that she "tussled" with Porter for several minutes to protect her daughter and, like Ferebee, she noticed that Porter was carrying a black gun. Consistent with Ferebee's account, Morgan also stated that Porter struck her daughter in the head with the gun after he pushed open a bedroom door. At trial, both Ferebee and Morgan identified Porter again as the perpetrator, with

Morgan stressing that she was certain in her identification. A transcript of Ferebee's 911 call identifying Porter further corroborated the women's testimony. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that a witness's testimony was not incredible when it was corroborated by other evidence).

Finally, although Porter denied that he committed the offenses or that he carried a gun, the trial court was entitled to reject his self-serving testimony and conclude that he was lying to conceal his guilt. *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011). Thus, viewed as a whole, the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that Porter was the perpetrator. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that Porter was guilty of the charged offenses.

### III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*