COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Huff and Chaney
Argued at Norfolk, Virginia


SHAWN WILLIAM WHITE

                                        MEMORANDUM OPINION* BY
v.       Record No. 0802-22-1              JUDGE VERNIDA R. CHANEY
                                            AUGUST 29, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Stephen J. Telfeyan, Judge

(Andrew K. James; Andrew K. James, P.C., on brief), for appellant.
Appellant submitting on brief.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the trial court convicted Shawn William White of the felony offense

of third or subsequent petit larceny, misdemeanor property damage, and misdemeanor vehicle

tampering.  On appeal, White contends that the trial court erred in (i) admitting into evidence

"impermissible expert opinion" identifying White as the perpetrator depicted in surveillance images

and (ii) convicting White based on insufficient evidence to prove that he perpetrated or participated

in the crimes.

White also appeals the trial court's sentencing order in a probation revocation case heard in

combination with White's sentencing on the three appealed convictions.  The trial court found

White in violation of the conditions of his probation based, in part, on new criminal convictions that

White had appealed or intended to appeal.  White contends that the trial court abused its discretion

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

in ordering him to serve two years and three months of his previously suspended sentence based on new convictions that he appealed.

For the following reasons, this Court affirms the trial court's judgment.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

On April 1, 2019, Phallyn Jimenez was shopping in a drug store when someone broke into the pickup truck that she had parked and locked outside the store. The back window of Jimenez's truck was kicked out, and her purse was stolen.

The drug store's surveillance video showed the following: Around 8:51 p.m., a black sedan parked next to the driver's side of Jimenez's truck. A woman—subsequently identified as White's cousin, Erica Baker—exited the driver's door of the sedan, walked around to the driver's door of Jimenez's truck, and tried to open the driver's door. Baker then opened the sedan's front passenger door, and a man—subsequently identified as White—exited the sedan wearing his jacket hood over his head. White peered into Jimenez's truck through the driver's window as Baker walked around the rear of the truck and pulled her jacket hood over her head. After White punched the driver's side window, he climbed into the truck bed, and Baker moved to the passenger side of Jimenez's truck and stood watch. White then entered Jimenez's truck through the rear window and exited through the driver's door. When the alarm lights on Jimenez's truck started blinking, Baker ran back to the sedan and sat in the driver's seat. After White entered the sedan on the passenger side, Baker and White drove away.[1]

---

[1] The trial court admitted into evidence only a two-minute segment of the store's surveillance video and six still photos—three of each suspect—created from surveillance videos.

- 2 -

The following day, the police executed a search warrant at Baker's residence. During the search, the police found a pink designer purse that Jimenez subsequently identified as the purse stolen from her truck. Baker's co-tenant, Vuong McCoy, saw White at Baker's residence in the afternoon on April 1.

At White's trial, the drug store's assistant manager, Kurt Oldroyd, testified that he made fair and accurate still photos of the suspects from the store's surveillance video. Oldroyd testified that he saw the suspects inside the store on the night of April 1, and he identified White as one of the suspects depicted in the surveillance photos. Oldroyd observed White walking around the store with a woman for a couple of minutes. Ten minutes after they left the store, Oldroyd was informed about the vehicle break-in. On cross-examination, Oldroyd testified that he was "pretty sure"—but "[n]ot 100 percent" sure, "[n]ot absolutely positive"—that White was the same person he saw in the store that night.

At trial, Detective David Todd testified that he had investigated White in relation to crimes in Norfolk, and he identified White in the courtroom. White did not object to Detective Todd's in-court identification. After Detective Todd identified White in court, White objected when the Commonwealth asked the detective whether he could identify the person depicted in three of the store's surveillance photos. White objected that the Commonwealth was eliciting impermissible expert opinion testimony because the trier of fact should determine for itself whether White was the person in the surveillance photos. White argued that the only witnesses who could permissibly testify about the identity of the person in the surveillance photos were the witnesses who were present at the time of the alleged offenses and had personal knowledge of the events at issue. Because the detective was not present at the time of the alleged offenses, White argued that he could not permissibly testify—based on the surveillance photos—whether White was in the drug store that night. The trial court noted that Detective Todd's testimony indicated that he

was familiar with White. Given this, the trial court allowed the detective to testify whether he could identify the individual in the surveillance photos; but the trial court did not allow Detective Todd to testify whether the person depicted in the surveillance photo was the suspect in the store that night. Over White's objection, Detective Todd identified White in all three surveillance photos.

Detective Todd's partner, Detective Alyce Clark, testified at trial that she had investigated crimes in Norfolk involving White, and she also identified White in the courtroom. White did not object to this in-court identification. After Detective Clark identified White in court and in the three surveillance photos, White made the same objection that he made to Detective Todd's identification of the suspect in the surveillance photos. Again, the trial court overruled White's objection.

After the Commonwealth rested its case-in-chief at trial, White moved to strike the evidence and argued that there was no credible evidence identifying him as the person who broke into Jimenez's truck and stole her purse. After the trial court denied White's motion to strike, White presented no evidence in his defense. White renewed and incorporated his motion to strike in his closing argument. Following closing arguments, the trial court found that White acted in concert to commit the charged offenses with the female suspect depicted in the surveillance videos. Accordingly, the trial court found White guilty as charged.

White's sentencing hearing in May 2022 was combined with a probation revocation hearing that had been continued from October 2019. At the October 2019 revocation hearing, the trial court found White in violation of the conditions of his probation on his underlying conviction for grand larceny of a motor vehicle. At the May 2022 revocation hearing, White admitted additional alleged probation violations based on new criminal convictions that he incurred while on probation. White stated that "the Norfolk matters" were then on appeal, and the "Chesapeake matters" likely would be appealed as well. The trial court found White guilty of

additional probation violations based on his additional new convictions, including the convictions that were on appeal or still subject to appeal.[2]  After finding White guilty of the additional alleged probation violations, the trial court revoked and reimposed White's previously suspended ten-year sentence and resuspended seven years and nine months of that sentence.

On the three appealed convictions, the trial court sentenced White to incarceration for 5 years with 3 years suspended for petit larceny, third or subsequent offense, 12 months with 10 months suspended for misdemeanor property damage, and 12 months with 9 months suspended for vehicle tampering.  This appeal followed.

ANALYSIS

A. *Admissibility of the Detectives' Identifications of White in the Surveillance Photos*

White contends that the trial court erred in allowing two detectives to testify that he was the person depicted in three surveillance photos of one of the suspects.  White argues that this testimony "amounted to impermissible expert opinion that invaded the purview of the trier of fact." Amended Op. Br. 3.  Because neither detective personally knew White before March or April 2019 and both detectives had minimal contact with White, White contends that the detectives' identifications of White in the surveillance photos were not "reasonably based upon the[ir] personal experience and observations," as required for admissible lay opinion testimony. Amended Op. Br. 13 (quoting Va. R. Evid. 2:701).  Therefore, White argues, the detectives' identifications of White in the surveillance photos were inadmissible expert opinions.

---

[2] An addendum to the probation officer's major violation report alleged that White had incurred 12 new convictions since January 2019.  In addition to the three convictions appealed here, the addendum lists the following new convictions: felony credit card theft in Norfolk Circuit Court, three convictions for grand larceny in Norfolk Circuit Court (including a conviction for grand larceny of an automobile), burglary and conspiracy to commit burglary in Norfolk Circuit Court, grand larceny of an automobile and vehicle tampering in Hampton Circuit Court, and driving on a suspended license in Virginia Beach General District Court).

White did not raise at trial the issue of each detective's ability to identify him in the surveillance photos based on his or her personal experience or observations. Rather, White objected that it was for the trier of fact to determine whether he was the person depicted in the surveillance photos. White contended that it was "totally impermissible" "for the Commonwealth to bring in a witness who's giving opinion testimony that the individual in the photographs is [White]." R. 446. Additionally, White objected that the detectives were not present to witness any events at issue and thus lacked the requisite personal knowledge to testify—based on the surveillance photos—whether White was the male suspect in the drug store around the time of the offenses. The trial court agreed that the detectives should not be allowed to testify that White was in the drug store that night. Noting that the detectives testified that they were familiar with White, the trial court allowed the detectives to testify that White was the person depicted in the surveillance photos. Because White did not object at trial that the detectives' identifications of him in the surveillance photos were not reasonably based upon their personal experience and observations, this Court will not consider this issue on appeal. *See Bowman v. Commonwealth*, 30 Va. App. 298, 301 (1999) (refusing to consider on appeal the issue of a witness's ability to identify the defendant in a video because the defendant did not raise the objection at trial); *see also* Rule 5A:18.

### B. *Sufficient Evidence that White was the Perpetrator*

When reviewing the sufficiency of the evidence to sustain a criminal conviction, "[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). On review of the trial court's factual findings underlying a conviction, "[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable

doubt." *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

This Court's deference to the trial court's factual findings stems, in part, from the trial court's "opportunity to observe the witnesses' testimony and demeanor." *Lopez v. Commonwealth*, 73 Va. App. 70, 82 (2021). Accordingly, settled principles dictate that "[d]etermining the credibility of witnesses . . . is within the exclusive province of the [fact-finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (second alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness'[s] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). Evidence is not inherently incredible "unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

White contends that "[i]f you remove the identifications made by Detectives Todd and Clark of the defendant being the individual in the still photographs, there is no evidence to support a finding that the defendant was the individual who perpetrated these crimes or acted in concert with someone who perpetrated these crimes." Amended Op. Br. 16. However, the evidence does not support a finding that the detectives' identifications of White in the surveillance photos were inherently incredible. Before identifying White in the surveillance photos, both detectives testified at trial that they had investigated White for other crimes in Norfolk and identified White in the courtroom. Based on the detectives' testimony about their investigations of White and their in-court identifications of White, a rational fact-finder could infer, as the trial court did, that the detectives were sufficiently familiar with White to testify whether he was the person depicted in surveillance photos. Given (i) the detectives' identifications of White as the person depicted in the surveillance photos and (ii) the surveillance videos showing what appears to be that same person breaking into Jimenez's truck while the female suspect stood watch, a rational fact-finder could find beyond a reasonable doubt that White perpetrated or acted in concert with another to commit the charged offenses. Therefore, this Court holds that the evidence is sufficient to sustain White's convictions.

### C. Probation Revocation Sentence Based on Appealed Convictions

White argues that the trial court abused its discretion in imposing an active sentence of two years and three months of his previously suspended sentence based on convictions that he appealed—including the convictions at issue in this appeal and some convictions in Norfolk.[3]

---

[3] In his third assignment of error, White contends that the trial court also improperly relied on convictions appealed from the Hampton Circuit Court. In his brief, however, White concedes that the record demonstrates that he did not appeal his Hampton convictions and he made that assertion "in error." Amended Op. Br. 18. "While concessions of law are not binding on an appellate court, we may accept concessions of fact." *Williams v. Commonwealth*, 71 Va. App. 462, 488 n.9 (2020) (quoting *Logan v. Commonwealth*, 47 Va. App. 168, 172 (2005)

White contends that if those convictions are reversed, this Court must remand the probation revocation case for resentencing because the sentence was based, in part, on these appealed convictions.

Assuming without deciding that White adequately raised this issue in the trial court, this Court declines to consider it because the issue is moot. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) ("[I]n cases where the ability of the Court to review an issue on appeal is in doubt, we may 'assume without deciding' that the issue can be reviewed provided that this permits us to resolve the appeal on the best and narrowest grounds.").[4] Because this Court affirms White's convictions in this appeal, the issue of the trial court's consideration of these convictions in imposing the probation revocation sentence is moot. *See Patterson v. Commonwealth*, 12 Va. App. 1046, 1050 (1991) (holding defendant's appeal of revocation based on new conviction was moot where the underlying conviction was affirmed on appeal).

The issue of imposing the probation revocation sentence based, in part, on White's appealed Norfolk convictions is also moot. "Where the criminal conviction underlying the revocation is affirmed on appeal, the appeal is considered without merit; or is considered moot." *Id.* at 1049 (citations omitted). This Court affirmed White's Norfolk convictions for burglary, grand larceny, larceny of a firearm, conspiracy to commit burglary, and credit card theft, and the Supreme Court of Virginia refused his petition for appeal. *See White v. Commonwealth*,

---

(en banc)). This Court accepts White's concession that he did not appeal his Hampton convictions.

[4] "The 'best' answer to a legal question is" the answer with which "the greatest number of jurists would agree[,]" and "[t]he 'narrowest' answer to a legal question is the one affecting the least number of cases." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020). Rather than determining whether Rule 5A:18 bars this Court from reaching the merits of White's argument, "we limit our holding to what we consider to be 'the best and narrowest grounds available,'" which in this case is the mootness of White's argument. *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 58 (2021) (quoting *Butcher*, 298 Va. at 396).

No. 0918-21-1, slip op. at 8 (Va. Ct. App. July 19, 2022); *White v. Commonwealth*, No. 220512 (Va. Nov. 29, 2022). Consequently, White's appeal of his revocation sentence in this case is moot and we do not consider it.

CONCLUSION

For the above reasons, this Court affirms the trial court's judgment.

*Affirmed*.