COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and Fulton


TRAVIS RYAN BROWN

v.      Record No. 1549-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE CLIFFORD L. ATHEY, JR.
NOVEMBER 14, 2023


FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
Anne F. Reed, Judge

(Dana R. Cormier; Dana R. Cormier, P.L.C., on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; John Beamer, Assistant
Attorney General, on brief), for appellee.  Appellee submitting on
brief.


Following a bench trial, the Circuit Court of the City of Staunton ("trial court") convicted

Travis Brown ("Brown") of felony unauthorized use of a motor vehicle and sentenced him to five

years' incarceration, with two years and ten months suspended.  On appeal, Brown contends that the

trial court erred by finding the evidence sufficient when the primary prosecution witness was

inherently incredible.  Both parties have waived oral argument in this case.  Code § 17.1-403(ii).

For the following reasons, we affirm the judgment of the trial court.

I. BACKGROUND

In 2021, Brown's girlfriend, Brittany Southern ("Southern"), moved into the home of Tina

Raynes ("Raynes") where Southern and Brown frequently spent time together.  On August 20,

2021, Southern and Brown borrowed Raynes's 2017 Ford Escape in order to meet with Southern's

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

probation officer and for Brown to attend an appointment. Raynes believed that these errands would only take "a couple" of hours and gave her car keys to Brown "because he was the licensed driver."[1] Later that day, Brown assured Raynes via Southern's phone that they would return Raynes's car in "about six more hours." When Brown and Southern had not returned Raynes's car by the following morning, Raynes reported the car missing to the police. However, Raynes did not seek warrants since the unauthorized use of a motor vehicle charge was a felony.[2] Having attempted—unsuccessfully—to contact Southern and Brown throughout the following day, Raynes returned to the police station that evening and reported her car stolen. Since she did not mention Southern in the police report, the police only secured an arrest warrant for Brown. Subsequently, on August 22, police recovered Raynes's car in the middle of the roadway in Augusta County with no keys and the windows down.

At trial, Brown denied ever driving the car, indicating that he "was just along for a ride," and he further testified that Raynes gave Southern the keys, not him. He emphasized Southern's culpability, stating that she had arranged to borrow Raynes's car, she devised an excuse to do so, and that she was the person driving. Brown denied that he had shown Raynes his driver's license, stating, "you don't do that to people." He also denied ever speaking with Raynes after he left in her car.

Brown subsequently moved to strike the evidence, challenging Raynes's credibility and arguing that Raynes equivocated when she testified that she both gave the keys to Brown and gave

---

[1] Raynes testified that she had seen Brown's driver's license and that she knew Southern did not have a license.

[2] The evidence showed that Raynes's car was worth $16,677 approximately four months after this incident; well above the $1,000 threshold to elevate the charge to a felony. *See* Code § 18.2-102.

the keys to "them." Brown also noted Southern's omission from the police report and posited that Raynes testified falsely against Brown to avoid implicating her friend.

The trial court denied the motion to strike, finding that Raynes allowed Brown to drive her vehicle and that her testimony was "credible." The trial court subsequently convicted Brown of felony unauthorized use of a motor vehicle and sentenced him to five years' incarceration with all but two years and two months suspended. Brown alleges on appeal that Raynes's testimony was "inherently unreliable and thus insufficient as a matter of law."

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

*B. Raynes's testimony was not inherently incredible as a matter of law, and therefore, the trial court did not err in crediting Raynes's account over Brown's account.*

Brown contends that Raynes's testimony that she gave the car keys to Brown, an acquaintance, rather than Southern, a friend, is "inherently unreliable and contrary to normal human experience." We disagree.

"Determining the credibility of witnesses . . . is within the exclusive province of the [fact finder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ragsdale v. Commonwealth*, 38 Va. App. 421, 429 (2002) (quoting *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)).

A fact finder's "evaluations of credibility" often involve "choosing between competing accounts offered by different witnesses." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011); *see Hamilton v. Commonwealth*, 279 Va. 94, 104-05 (2010). Nothing in Raynes's testimony was so manifestly false that no reasonable fact finder could believe it, nor was it disproved by any objects or facts; Brown merely contradicted it. Indeed, the trial court explicitly noted that "this case . . . come[s] down to credibility of the witnesses." Further, the fact finder was permitted to discard Brown's self-serving testimony and "conclude that [he wa]s lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App.

505, 509-10 (1998)).  Thus, the trial court was entitled to discount Brown's testimony and to believe Raynes.

Moreover, Raynes explained that she gave Brown the keys because she would not "lend [her] car to a person who doesn't have a driver's license" because it is "illegal . . . [t]o operate a car without a license."[3]  Not only was Raynes's choice to entrust her car to a licensed—rather than unlicensed—driver not "contrary to normal human experience," it was a logical decision grounded in the law.  Accordingly, we cannot say that the trial court erred in crediting Raynes's testimony.

### III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

---

[3] Code § 46.2-300 provides that "[n]o person . . . shall drive any motor vehicle on any highway in the Commonwealth until such person has applied for a driver's license, . . . satisfactorily passed the examination required by § 46.2-325, and obtained a driver's license, nor unless the license is valid."  Code § 46.2-300.  A first violation of this statute is a Class 2 misdemeanor.  *Id.*