COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Callins
Argued by videoconference

**UNPUBLISHED**

MARTIQUE LAQUAN HOLLAND

MEMORANDUM OPINION* BY
v.      Record No. 1711-24-3      JUDGE DOMINIQUE A. CALLINS
                                   DECEMBER 30, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

James C. Martin (Martin & Martin Law Firm, on brief), for
appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Martique Laquan Holland was convicted of first-degree murder, use of a firearm in the

commission of a felony, and possession of a firearm by a convicted violent felon. Holland

appeals the first-degree murder conviction, arguing the evidence was insufficient to establish

premeditation. Finding no error, we affirm the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Holland, his girlfriend "TT," and his nephew A.H.[2] were "[s]moking and drinking" in front of "the M building" at Woodside Apartments when Marcus Hairston called TT on her phone. Hairston and Holland had "beef" with each other because of several previous altercations. On the phone call, Hairston asked TT where Holland was and said that he heard Holland and A.H. were seeking to rob Hairston. Hairston told TT that he was "ready to come over their [sic] b**** and . . . come shoot that b**** up pistol whip." Because TT answered the call "on speaker," Holland heard Hairston's threats. Holland responded to Hairston that "we going to see about it." Before ending the call, Hairston told Holland, "I ain't going to even come over there messing with y'all right now."

A few minutes later, Hairston called back and indicated he would come over, after all, to "shoot the apartment up." In response, Holland and A.H. promised Hairston, "[c]ome through here again you ain't going to live to see another day."

Following the phone call, Holland and A.H. went to get their guns. The two then entered an abandoned apartment on the second floor of the M building. They observed Hairston approach TT in front of the M building. Although at one point Hairston pulled out a gun and waved it in TT's direction, "he put it back" and was no longer presenting the gun. Hairston did not fire, nor did he look up in the direction of the abandoned apartment.

---

[1] We review the evidence in the light most favorable to the Commonwealth, the prevailing party in this case, discarding Holland's conflicting evidence and regarding as true the credible evidence of the Commonwealth and all fair inferences drawn therefrom. *Commonwealth v. Barney*, 302 Va. 84, 96-97 (2023). "'This deferential principle' applies to issues of witness credibility and the factfinder's interpretation of all the evidence." *Reed v. Commonwealth*, 85 Va. App. 196, 201 n.1 (2025) (quoting *Barney*, 302 Va. at 97).

[2] We use initials, instead of his name, to protect the privacy of the minor child. *See Grimaldo v. Commonwealth*, 82 Va. App. 304, 312 n.3 (2024).

After Hairston put his gun away, Holland and A.H. began shooting down on Hairston from the second floor. A.H. testified that at no point while he and Holland shot down at Hairston did Hairston return fire. A.H. continued shooting until he could no longer see Hairston; Holland shot at least three more times after A.H. stopped, until his firearm emptied. The two then fled the scene. When police arrived on the scene, they found Hairston deceased, near the M building, with a gun between his arm and body.

Although they initially fled to a hotel at the border of Virginia and North Carolina, police arrested Holland and A.H. the next day at the home of TT's mother in Virginia. Upon execution of a search warrant, police discovered a disassembled firearm "covered in some sort of liquid" in the rear bedroom of the residence. The slide had been removed from the gun, and the barrel had been removed from the slide, but all parts were found "grouped together" underneath a pillow.

When later interrogated by the police, A.H. denied being present at the M building on the evening of the shooting. At trial, the Commonwealth introduced recordings of jail call conversations wherein Holland tells several people he was not present on the night of the shooting and advises his mother to tell A.H. to "keep on with that incompetency. We don't need him flipping on me."

At the close of the Commonwealth's evidence, Holland moved to strike. He argued the evidence was insufficient to establish premeditation and asked the court to reduce the charge to second-degree murder. The trial court denied his motion.

Holland then testified in his own defense. Holland admitted that he used the gun in the shooting of Hairston and that he took it apart to avoid the police detection. He admitted to lying to police about his presence on the scene of the shooting because he "didn't know if [he] could trust the police." Holland also admitted that he shot at Hairston 15 times, emptying his firearm, and that the animus between he and Hairston began because Hairston "shut the door in

[Holland's] face." Holland acknowledged that, on the evening of the shooting, Hairston had not "pulled a gun" on him. Yet Holland maintained that he shot in self-defense and that he did not aim to shoot anyone in particular.

At the close of all the evidence, Holland renewed his motion to strike on the same grounds. The trial court again denied his motion. Thereafter, the jury found Holland guilty of first-degree murder, use of a firearm in the commission of a felony, and possession of a firearm by a convicted violent felon. Holland appeals.

## ANALYSIS

On appeal, Holland's sole argument is that the evidence was insufficient to prove premeditation for his first-degree murder conviction.[3] We disagree.

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The issue of whether a killing was willful, deliberate, and premeditated is a question of fact that we will not disturb on appeal unless plainly wrong or without evidence to support it." *Aldridge v. Commonwealth*, 44 Va. App. 618, 655 (2004) (citation omitted). Thus, the only relevant question for this Court "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

---

[3] During oral argument, Holland conceded he challenges only his first-degree murder conviction. Thus, we address the sufficiency of the evidence to support only that conviction.

First-degree murder is "[m]urder . . . by any willful, deliberate, and premeditated killing." *Rhodes v. Commonwealth*, 238 Va. 480, 485 (1989) (alterations in original) (quoting Code § 18.2-32). "To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second[-]degree murder." *Id.* (quoting *Smith v. Commonwealth*, 220 Va. 696, 700 (1980)). "The intent to kill must come into existence at some time before the killing," but "it need not exist for any particular length of time." *Avent v. Commonwealth*, 279 Va. 175, 208 (2010) (quoting *Remington v. Commonwealth*, 262 Va. 333, 352 (2001)).

> In deciding [whether premeditation and deliberation exist], the jury may properly consider the brutality of the attack, and whether more than one blow was struck, the disparity in size and strength between the defendant and the victim, the concealment of the victim's body, and the defendant's lack of remorse and efforts to avoid detection.

*Id.* (alteration in original) (quoting *Epperly v. Commonwealth*, 224 Va. 214, 232 (1982)). Additionally, "[w]hile motive is not an essential element of the crime, it is relevant and often most persuasive upon the question of the actor's intent." *Epperly*, 224 Va. at 232. These *Epperly* factors are not a comprehensive checklist to be ticked off, nor is one factor dispositive of premeditation to the exclusion of all others. *Id.* ("While none of these factors might be sufficient standing alone, in combination they are more than enough to support the jury's finding that the killing of [the victim] was not only malicious, but also willful, deliberate, and premeditated."). Rather any, all, or some combination of these factors may be considered by a factfinder in weighing the evidence for or against conviction.

Here, the evidence sufficiently supports a finding of premeditation. First, Holland's conduct in firing at Hairston from an elevated vantage point—the second floor—until his firearm was emptied constitutes a brutal attack. Holland argues that the shots were "not directed to any particular person" and that Hairston also had a gun. However, A.H. testified—and Holland admitted—that Hairston was not holding the gun when Holland fired at him 15 times. Further, both

A.H. and Holland acknowledged that Holland had prior "beef" with Hairston and that they promised Hairston that if he, "[came] through here again [he] ain't going to live to see another day." The history and threats indicated Holland's motive to kill Hairston. The jury was entitled to judge the credibility of Holland's contention that he did not specifically intend to shoot Hairston. *See Dalton v. Commonwealth*, 64 Va. App. 512, 525-26 (2015). Put simply, they were "entitled to disbelieve [Holland's] self-serving testimony" and conclude that he was "lying to conceal his guilt." *Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022) (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011)).

Holland also attempted to avoid detection and displayed a lack of remorse. He fled the scene to the border of Virginia and North Carolina. Ultimately, police found Holland hiding out in his girlfriend's mother's residence. When they recovered the firearm used in the crime, it was disassembled and "covered in some sort of liquid." Holland admitted he placed the firearm in that state to avoid police detection. He also admitted lying to the police about his presence at the scene of the shooting. Holland's jail calls also demonstrated his lack of remorse. In addition to continuing to deny his role in the shooting, Holland asked his mother to tell A.H. to "keep on with that incompetency" and advised that he didn't "need [anyone] flipping on [him]." Thus, the jury's finding of premeditation was not plainly wrong or without evidentiary support.

CONCLUSION

Accordingly, the trial court's judgment is affirmed.

*Affirmed.*